# John Tulo, Appellee, v. O'Gara Coal Company, Appellant.

1. MINES AND MINERALS, § 74*—*proximate cause of injury.* Evidence *held* sufficient as tending to show that the negligence of the mine manager in directing cars to be run on certain tracks in the mine may have been the proximate cause of injury to servant and to raise a question for the jury.

2. MINES AND MINERALS, § 148*—*when variance not fatal.* Where declaration alleges that before receiving his injury plaintiff was at a certain place in the mine, at the direction of defendant and the evidence shows he was there at his own volition, *held* not fatal.

3. MINES AND MINERALS, § 192*—*when instructions may ignore question of assumed risk and fellow-servant rule.* In an action for injuries resulting from the negligent orders of mine manager, question of assumed risk or fellow-servant rule *held* not to arise so as to be required to be incorporated in an instruction.

4. MASTER AND SERVANT, § 337*—*when servant does not assume risk.* A servant does not assume risks which are not ordinarily connected with the service and which are due to the failure of the master to exercise reasonable care and prudence.

5. MASTER AND SERVANT, § 816*—*when instruction as to due care of servant in escaping from danger proper.* An instruction advising the jury that if plaintiff, by reason of the negligent acts of the defendant, became frightened and ran away from a place of safety he would not thereby be precluded from recovering, if he is otherwise entitled to recover, *held* proper.

6. MASTER AND SERVANT, § 816*—*when instruction defining ordinary care sufficient.* Language used in an instruction defining ordinary care, "that plaintiff was acting as an ordinary prudent person would have acted under the same circumstances," *held* a fair definition.

7. EVIDENCE, § 272*—*when plat of mine not admissible.* A plat showing distance of the dead line from the bottom of the shaft in a mine *held* not admissible where no witness testified to the measurements and it was not shown that the plat was correct.

8. APPEAL AND ERROR, § 438*—*when objections for variance not saved.* Variance between declaration and proof cannot be taken advantage of on appeal when trial court's attention was not called to it.

Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed June 10, 1913. Rehearing denied October 28, 1913.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

M. S. WHITLEY, for appellant; MASTIN & SHERLOCK, of counsel.

RONALDS & DODD and CHOISSER, CHOISSER & KANE, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment obtained by plaintiff in the court below for eleven hundred dollars.

Appellant was the owner of a coal mine in Saline County, Illinois, known as No. 8, and was operating the same at the time that the plaintiff was injured, which occurred in its mine on about the 20th day of December, 1909. On the south of the main shaft is an entry of the width of about fourteen feet and it is through this entry that the coal is loaded onto the cages and the men enter the cages from the south side of the shaft for the purpose of being hoisted to the top. There are some switches in this entry extending off to the south, in addition to the main track over which coal is sometimes brought to the mine. On the south side of this shaft at the distance of from fifteen to thirty feet a line is drawn over the top of this entry and marked "dead line" and is designated as the point at which men must stop and wait as they come in from the workings of the mine to be hoisted out. There is some evidence tending to show that this dead line was fixed by the defendant and other evidence tends to show that it was used by custom. On the afternoon in question at about 4:20 o'clock the plaintiff came from his work, and as the evidence shows stopped just south of this dead line and remained there until after the whistle blew at 4:30. In the meantime a large number of men had gathered, probably one hundred or more, and were standing in line, four deep, waiting for the shaft to quit hoisting coal and to take them to the top. The

plaintiff was one of the foremost men of the column. In the meantime and while the men were assembled at this place waiting for the whistle to blow, and, as some of them say, about the time the whistle did blow the mine manager, George Barrowman, passed by the men congregated at this point and went further south to where some coal was being brought in by an electric motor. One of the witnesses testifies that when the mine manager went out to where the cars of coal were brought in and they had started to put them on the south and drop in the side "as we always did," that Barrowman said: "Pull them down and put them on the east and sling them in from there;" other witnesses say that, "In dropping them in from the south we have just enough speed to get them in." Other witnesses say that there were twelve or fourteen cars in the trip; that they backed them on the east and got them upon a hill and that Barrowman said to sling them in as they had to have the track to get some props in the mine, and that it was after the whistle had blown; that the cars were brought down and slung in and they went in pretty fast, at the rate of about twenty miles an hour. Sprags were used but they broke as fast as they were put into the wheels. Cars were at other times brought in in this way but it was during the time at which the men were at work in the mine and then the cars were "chained down." There were some cars loaded with coal standing close to the mine and as this trip of cars came running in so rapidly some one shouted "look out" and the men, including the plaintiff, became frightened and scattered seeking places of safety. The plaintiff heard the cars coming down the track and, as he says, became frightened and started to run to the pump. The trip of cars bumped against the cars that were standing at the mine and knocked them off the track and as plaintiff ran he was caught between one of these cars and a prop and was injured.

The evidence tends to show that at the time the mine

manager directed this trip of cars to be "slung in" on the track that he knew the track had such a grade as to cause the cars to run rapidly towards the place where the men were assembled, unless they were in some manner restrained, and he at that time knew where the men were standing.

Omitting the formal parts, the declaration alleges that the defendant had directed the plaintiff and others of its employes to stand and remain in that part of the said passageway near to the bottom of said shaft after their day's work was completed while waiting to be hoisted out of the mine; that it had been the custom and practice for some time prior for the employes in said mine to gather in said passageway and there wait to be hoisted out, which said custom was known to the defendant; that on said day while plaintiff was waiting in said passageway, near the bottom of the shaft, to be hoisted, and while in the exercise of due care and caution for his own safety he was then and there injured in the manner following; said defendant, while the plaintiff and a number of other employes in said mine on said day were then and there waiting in said passageway to be hoisted out of said mine, which fact was then and there known to the defendant, or could have been known by the defendant by the exercise of reasonable care on its part, negligently, carelessly and recklessly caused a trip of loaded cars to be hauled by said electric motor power to the said incline at a rapid rate of speed along the track in said passageway while said plaintiff and other employes were then and there waiting as aforesaid, and said cars then and there ran upon and against other cars that were then and there standing on said track at and near the point where the plaintiff was then and there standing and caused certain of said cars to be derailed and thrown from said track, which cars being derailed then and there ran upon and against the plaintiff and injured him. The cause was tried before a jury and it was determined by such jury

that the defendant was guilty of the negligence charged in the declaration; that the plaintiff was in the exercise of due care for his own safety and accordingly gave a verdict in favor of the plaintiff, upon which the court rendered judgment.

It is insisted by counsel for appellant that the court erred in its rulings upon the admissibility of evidence, the giving and refusing of instructions and the rendering of judgment herein, and we will consider the errors assigned and argued in the manner presented.

It is first insisted that there is such a variance between the declaration and the proof as to preclude a recovery; and one of the matters in which counsel claim there is a variance is that it is charged in the declaration that he was at the place before receiving his injury at the direction and order of the defendant and that the evidence shows he was there of his own volition. It does not seem to us that there is such variance here, if any, as to constitute reversible error, but if there was a variance the appellant is in no position to take advantage of it as it did not in any manner call the attention of the trial court to such variance. No motion of this character has been pointed out to us as having been made on the trial as to this or any other variance. "A motion to instruct the jury to find for the defendant on the ground of a variance between the pleadings and the evidence is not sufficient to raise the question of variance, unless the defendant, by its motion, indicates specifically in what the variance consists, so as to enable the court to pass upon it intelligently, and also to enable the plaintiff to so amend his declaration as to make it conform to the evidence." *Illinois Cent. R. Co. v. Behrens*, 208 Ill. 20.

It is next contended that the court should have directed a verdict for the defendant for the reason that all the risk was assumed by the plaintiff and that there was no act of the defendant which when considered in the light of the evidence could have been the proxi-

mate cause of the injury. The negligence here charged, and we think the evidence tends to prove, was the order of the defendant's mine manager to throw this trip of cars on to a track that had a down grade, towards the place where the plaintiff and other men stood, and caused this trip of cars to run towards them in a very rapid and dangerous manner. If it is true, as the evidence tends to prove, that the mine manager knowing that these men were assembled at the place where they were, and where they had a right to be, and that the track had a decline towards these men, caused the motorman to throw this trip of cars on to this track in such a manner that it would run very rapidly towards these men and the plaintiff, such an order under such circumstances would tend to show recklessness and negligence upon the part of the mine manager and would not be such an incident as would ordinarily be connected with the service of the plaintiff. This order was not and could not be known to the plaintiff, and we do not understand that the servant assumes the risk of the negligent acts of the master that are unknown to such servant. "A servant does not assume risks, which are not ordinarily connected with the service, and which are due to a failure of the master to exercise reasonable care and prudence." *Himrod Coal Co. v. Clark,* 197 Ill. 518.

We are not able to see why the giving of the order, that the evidence tends to show was given in this case, could not be the proximate cause of this injury, as one of the witnesses says they were about to place the trip of cars in on the side when they were directed by the manager to sling them in in the manner in which they were thrown in, and had it not been for the order of the master we think the strong probabilities are that the accident would not have happened. At all events, we think the evidence tended to show that the negligence of the master may have been the proximate cause of the injury, and under such circumstances it is the province of the jury to determine whether said

negligent acts were or were not the proximate cause. "It was for them (the jury) to say whether the result that happened was an ordinary and natural result that might have been reasonably foreseen, considering all the circumstances of the case." *American Exp. Co. v. Risley,* 179 Ill. 299.

It is next complained that the court erred in refusing to admit appellant's plat that it offered in evidence. One of the matters in dispute was the distance of the dead line from the shaft. It was claimed that the plat offered in evidence was drawn to a scale and the distances were marked upon this plat in feet, and the distance from the shaft to the dead line was marked thereon thirty feet, but no witness testified to any measurements from which this plat was made, nothing to show that the distances as shown upon the plat were correct, and we do not think the court erred in refusing to admit the plat in evidence.

The fourth and last error assigned is as to the giving and refusing of instructions. Appellant criticises the first instruction given on behalf of appellee, that it does not give the defendant the benefit of assumed risk and the fellow-servant rule. As we understand this case, the question of assumed risk or fellow-servant does not arise and we can see no reason why that should be especially incorporated in an instruction. As to the other criticism upon this instruction we do not believe that the instruction is vicious on account of assuming the facts claimed. We think the instruction requires the allegations to be proved.

The criticism upon the second instruction is not well taken. No one could be misled by the language there used in defining ordinary care, "that plaintiff was acting as an ordinary prudent person would have acted under the same circumstances." The person here referred to illustrates the class and is a fair definition of what is required to constitute due care and caution.

As to the criticism upon the third of appellee's in-

structions, it is claimed by counsel for appellant that because the plaintiff by reason of having become frightened ran away from a place of safety that he could not recover. This instruction, as we understand it, advises the jury that if the plaintiff by reason of the negligent acts of the defendant became frightened and ran away from a place of safety that he would not thereby be precluded from recovering, if he is otherwise entitled to recover. We think this is a correct proposition of law and well sustained by the authorities. It is said by Mr. Thompson that where, "One without his own fault is through the negligence of another put in such apparent danger as to cause him terror, loss of self-possession and bewilderment, and, as a natural result thereof, he, in attempting to escape, puts himself in a more dangerous position, he is not, as a matter of law chargeable with contributory negligence that will prevent him from recovering damages for the injury." Thompson's Commentaries, vol. 1, sec. 195. And this language was quoted approvingly in the case of *Chicago & A. R. Co. v. Corson*, 198 Ill. 102.

This also disposes of the criticism made upon appellee's ninth instruction and of appellant's first, second, sixth, seventh and eighth refused instructions, and we think the court committed no error in refusing them as they were all of the purport that if the plaintiff was injured in consequence of leaving a safe place and going to a more dangerous place that he could not recover, ignoring entirely the question of his being frightened, and, as we believe, do not state correct propositions of law.

It appears to us from a careful reading of this record that no such errors were committed as to require a reversal of this case and the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*