(23 Misc. Rep. 91.)

WARD v. ST. VINCENT'S HOSPITAL.

(Supreme Court, Trial Term, New York County. March. 1898.)

1. HOSPITALS—CHARITIES—NEGLIGENCE.

A hospital maintained as a public charitable institution is not liable to a pay patient therein for injuries received by her through the negligence of a nurse employed by said hospital, when there has been no negligence in the original selection of said nurse.

2. TORT OR CONTRACT.

A petition alleging that plaintiff engaged a room in a public charitable hospital and the services of a nurse, under an agreement to pay therefor, and was injured by the negligence of the nurse, and seeking to recover damages therefor, is an action in tort, and not an action on contract.

Action by Helen D. Ward against St. Vincent's Hospital for damages. A verdict was rendered for defendant, and plaintiff moved to set it aside, and for a new trial. Denied.

A. I. Elkus and E. C. James, for the motion.

Charles E. Miller and Austen G. Fox, opposed.

COHEN, J. On the 20th day of February, 1894, the plaintiff entered the institution maintained by the defendant as a public charitable institution (Laws 1848, c. 319), on Eleventh and Twelfth streets, in the city of New York. On the afternoon of the following day, she was put under the influence of ether for the performance of a "slight" operation by Dr. Lusk, who was her own private physician, as well as a visiting surgeon on defendant's staff. The operation was successfully performed, and plaintiff, while still under the influence of the anæsthetic, was carried to her room, and there placed in a bed, from which a hot, uncovered water bag had not been removed by the nurse in attendance. Thus, her right leg was severely burned. The wound continued open, and she suffered great pain from the injury until the 21st day of December, 1896, when Dr. McBirney performed a surgical operation upon the leg, and the wound healed. The usefulness of the limb still remains considerably impaired. Before plaintiff became an inmate of the hospital, Mrs. Howland, a sister of the plaintiff, went there, entering by the Twelfth street side, a building described by her as the "private pay patients' department." She there made arrangements, and paid to one of the Sisters of Charity, who were in charge of the hospital, $25 for the occupancy by the plaintiff of a private room, and for medicines, for the term of one week. At the same time, Mrs. Howland gave expression to the fears of the plaintiff and her family about the dangers of anæsthetics, and requested that the plaintiff be supplied with a skillful, experienced, trained nurse, and was told by one of the Sisters that the very best skilled nurse would be furnished to, and the very best care taken of, the plaintiff. The charge for the nurse was then agreed upon, at $3 a day, which was subsequently paid. This arrangement was reported to the plaintiff, who, pursuant to it, entered the hospital, where the events hereinbefore recited occurred. It further appears from the evidence that, in addition to the room, medicine, and nurse, which were paid for by the plaintiff, she received the other accom-

modations which the hospital afforded, including the attendance of Dr. Hughes, the house surgeon, and of Miss Sanborn, the superintendent of nurses at St. Vincent's Hospital.     No question is made of the competency or skill of the superintendent, but some evidence is introduced to show that the nurse by whose gross carelessness the hot-water bag was left in the plaintiff's bed, had entered the institution in June, 1893, was placed on a month's probation, and in July began a course of instruction, which would terminate in two years, at which time she would be entitled to a diploma.     Miss Sanborn testified that she had instructed the nurse in the use of hot-water bags, and had previously employed her as attendant nurse in serious surgical cases, where she had given entire satisfaction.     At the end of the whole case, the court directed a verdict in favor of the defendant.     The learned counsel for the plaintiff insist that such direction was error, on the ground that the defendant was guilty of the breach of an express contract, and is therefore liable for that breach as well as for a breach of duty at common law, and maintains, further, that, even if there had been no contract, the defendant is liable on the ground that the defendant, although a public charitable institution, cannot claim the immunity given to such institutions in this case, as the plaintiff was a pay patient; furthermore, that the public policy granting this immunity is unsound, and the basis upon which it rests insecure; and, lastly, that in the selection of the nurse there was evidence of negligence which should have been submitted to the jury.

The counsel for plaintiff, with some ingenuity, has, in the complaint, in the evidence offered, and in the brief submitted, laid almost equal stress upon the breach of an express contract by the defendant as upon the breach of duty imposed by law; but no ingenuity can alter the cause of action here.     It cannot be doubted that there would be a cause of action on the facts here presented independent of any contractual relation, if the plaintiff established negligence sufficient to hold the defendant.     Even assuming that the defendant had power to make the contract, it was not necessary to rely upon and prove it. This furnishes the test.     Turner v. Stallibrass [1898] 1 Q. B. 56; Schick v. Fleischhauer (decided February 25, 1898, by this court in the First appellate division, opinion by Rumsey, J.) 49 N. Y. Supp. 962.     Of course, evidence of the contract was properly admissible here, as is proof of the payment of fare in cases of a passenger sustaining personal injuries by reason of the negligence of the carrier; but such evidence does not change the cause of action.     This, then, is an action in tort.

What is the duty owed by the defendant to the plaintiff? is the next question to be considered.     The defendant, the hospital, is a public charitable institution.     It was doing no business for profit, and the money it received from patients like the plaintiff went to the support of the institution, and was far from sufficient to meet its expenses without contributions of charitably disposed individuals. Its affairs were managed by Sisters of Charity, who freely gave constant and faithful service.     There were no stockholders to whom dividends, even if earned, could have been paid.     As I read the cases, such

a defendant is only liable for negligence in the original selection of its servants. Having fulfilled that duty, it is not liable for the subsequent act of such servant, however careless or negligent, unless previous knowledge of unfitness has been brought home to the corporation. This limitation is founded upon public policy, upon which the very doctrine of respondeat superior itself may be said to be founded. Wood, Mast. & S. § 277. Much may be said against the soundness of this principle, and whether it would not be wiser to hold even public charitable institutions to a higher degree of care; but in this country it has been settled that for the promotion of works of humanity, and for the greater good of the greater number, that this is a sound public policy. McDonald v. Hospital, 120 Mass. 432; Boyd v. Insurance Patrol, 113 Pa. St. 269, 6 Atl. 536; Joel v. Hospital, 89 Hun, 73, 35 N. Y. Supp. 37. The opinions in the case of Glavin v. Hospital, 12 R. I. 411, contain many expressions antagonistic to this limitation of liability, and to the wisdom of the policy which underlies it; but in its decision the court holds the corporation liable only for care in the selection of its servants. Some confusion is occasioned by reason of the citation in the McDonald Case, supra, of Holliday v. Parish of St. Leonard, 11 C. B. (N. S.) 192, which exempted a quasi public corporation from liability for the negligent act of its servants, and which case was subsequently overruled in Coe v. Wise, L. R. 1 Q. B. 711; Trustees v. Gibbs, L. R. 1 H. L. 93. But no English case has been cited, nor have I been able to find any, which departs from the American rule affecting a corporation engaged only in public charity, and doing no business for profit, as is concededly true of the defendant in this case.

It is further contended that, since the plaintiff was a pay patient, the rule is not the same as heretofore expressed, but in the Glavin Case, supra, the plaintiff was a pay patient, and an examination of the record in the Joel Case, supra, will also show that the plaintiff was not a free or charity patient. Indeed, the Joel Case is almost precisely like the one under consideration, and, being a decision of the general term of the Second department of this court, is conclusive upon me. Moreover, it has been expressly held in another class of cases that a charitable institution does not waive its exemptions because it charges some patients who are able to pay. People v. Purdy, 58 Hun, 386, 12 N. Y. Supp. 307; Id., 126 N. Y. 679, 28 N. E. 249; In re Vassar, 127 N. Y. 1, 27 N. E. 394, in which case, at page 15, 127 N. Y., and at page 398, 27 N. E., the McDonald Case is cited with approval.

The final contention of the plaintiff is that there was some evidence of negligence in the selection of the nurse assigned to the plaintiff. The answer to this is that it may be doubted, under the cases above cited, whether the defendant's liability extended beyond the selection of a competent head of the school of nurses connected with the defendant. It will be conceded, or, if not, the evidence is absolutely conclusive, that Miss Sanborn, the superintendent of the training school for nurses, had many years' experience as a subordinate nurse, some years as the head of nurses both at New York Hospital and the Skin and Cancer Hospital, and for about two years had

charge of the nurses of the defendant. Her manner on the stand and her testimony convinced me that she was a woman of unusual skill and experience in her profession, and of remarkable executive ability. She had fully instructed the nurse whose act is here complained of in the use of water bags, and the necessity for covering them. The assistant had been employed in the abdominal ward, where operations of a much graver character than that to which the plaintiff was subjected were common, without complaint or mishap. It seems from the nature of the act here complained of that the veriest tyro in nursing would have known better than to have been so grossly negligent as was the nurse in charge of the plaintiff. It cannot have been from want of training or knowledge, because any person of average age and average intelligence, without any special training, would know the dangerous character of such an act. It was a single act of thoughtlessness or forgetfulness. Therefore, where is the evidence of causative negligence of the defendant corporation with regard to the selection of the particular nurse, even assuming its duty extended beyond Miss Sanborn, as the head of the nursing department?

It follows from these views that the direction in favor of the defendant was right, and the motion to set aside the verdict and for a new trial must be denied, however deeply one's sympathies may be aroused by the misfortune which has befallen the plaintiff, who doubtless has a good cause of action against the nurse who was the wrong-doer, but not against St. Vincent's Hospital.