## The Illinois Central Railroad Company

*v.*

## Fred Behrens.

*Opinion filed February 17, 1904.*

1. Variance—*when question of variance is not raised.* A motion to instruct the jury to find for the defendant upon the ground of a variance between the pleadings and proof does not raise the question of variance for review, unless the defendant indicates specifically in what the variance consists.

2. Evidence—*testimony as to condition of broken bolts is not expert testimony.* Testimony as to the appearance of broken bolts found in a piece of an exploded boiler and fire-box is not such evidence as calls for the qualification of the witnesses as experts.

3. Same—*what sufficient to go to jury as to cause of a boiler explosion.* Evidence that the broken parts of an exploded locomotive boiler and fire-box showed old breaks and that the crown-sheet was encrusted with hard mud and sediment, thus allowing the bolts to become so heated that·the threads "slipped," is sufficient, though contradicted, to go to the jury upon the question òf the cause of the explosion.

*Illinois Central Railroad Co.* v. *Behrens,* 106 Ill. App. 471, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Washington county; the Hon. William Hartzell, Judge, presiding.

W. W. Barr, (J. M. Dickinson, of counsel,) for appellant.

James A. Watts, (George Vernor, of counsel,) for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

This is an appeal from a decision of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Washington county for $3000 in an action by appellee against appellant, for personal injuries. The declaration consisted of two counts, the first alleg-

ing that the injury was occasioned by reason of the unsafe condition and lack of proper repair of an engine and boiler in the use of the defendant, in consequence of which it exploded. The second, that an engine operated by the defendant was so carelessly and negligently managed and cared for that the same exploded, causing the plaintiff's injury. The plea was the general issue and the trial by jury. An instruction to the jury to find for the defendant was asked and refused, both at the conclusion of the testimony offered by the plaintiff and at the close of all the evidence.

It is contended that the verdict of the jury and the judgment of the circuit court are inconsistent with and contrary to instructions given on behalf of the defendant. But that was a question for the Appellate Court, unless we shall conclude that there is an entire absence of proof in the record fairly tending to support the material allegations of the declaration.

It is again insisted that there is a variance between the evidence and the first count of the declaration, in that the count avers that the boiler exploded, while, it is said, the evidence shows that it was the fire-box which exploded. Unless the variance now complained of was specifically pointed out by the defendant on the trial it could not be raised, on appeal, either in the Appellate Court or here. A motion to instruct the jury to find for the defendant on the ground of a variance between the pleadings and the evidence is not sufficient to raise the question of variance, unless the defendant, by its motion, indicates specifically in what the variance consists, so as to enable the court to pass upon it intelligently, and also to enable the plaintiff to so amend his declaration as to make it conform to the evidence. (*Probst Construction Co.* v. *Foley*, 166 Ill. 31, and cases there referred to.) Counsel for the appellant fail to point out in the record wherein this inflexible rule of practice was complied with. There was, however, no material variance. The

fire-box, as we understand the evidence, may be called, and is, a part of the boiler.

A single instruction was given at the instance of the plaintiff, and it is insisted that it does not correctly state the law of the case. It was intended to direct the jury as to what elements of injury might be taken into consideration, in case it found the issues for the plaintiff, in estimating his damages. We do not regard it as subject to the criticism made by counsel, but are of the opinion that it announces substantially the correct rule of law.

Witnesses examined on behalf of plaintiff, who were at the place of the explosion soon after it occurred, testified that they found a piece of the fire-box and boiler with broken bolts, and described the appearance of them, using such expressions as "they looked like there was a few that were off, and others looked like the threads were drawn out of the sheet or boiler,—the ends just stripped off; looked like they were dark color, and a few —a part of them—looked like there was a fresh break, because they looked bright; the others looked dull." It is argued that this testimony was in the nature of expert evidence, and inasmuch as the witnesses did not qualify as experts, it was error to allow their testimony to go to the jury. The objection seems to have been general rather than specific as to any particular question or answer, but aside from this we think the point is without merit. The testimony was in no sense expert evidence, nor did the witnesses testify as such. What they saw and described was a matter of common observation.

It is urged, with much earnestness, that the trial court erred in refusing to instruct the jury to find the issues for the defendant. In determining whether the instruction should have been given we must confine ourselves to the single consideration whether or not the evidence introduced on behalf of the plaintiff, as shown by the record, with all its reasonable inferences and intendments, fairly tended to support the material allegations

of his declaration, the decision of the Appellate Court
having conclusively settled all controverted questions
of fact adversely to the defendant, so far as such facts
depend upon the mere preponderance of the testimony.
In the discussion of this question it must be conceded
that it was the duty of the defendant company to use
all reasonable care to furnish proper and safe locomo-
tives in the operation of its road, and a question is raised
whether the plaintiff made a *prima facie* case by proof of
the explosion, under the previous decisions of this court.
We do not regard that question important or material in
the decision of the case, as plaintiff did, we think, intro-
duce competent affirmative proof tending to support the
allegations of the declaration.

We are somewhat embarrassed in the consideration
of the evidence of the witnesses testifying in the case,
from the fact that upon the trial a model of the locomo-
tive engine which exploded was used by counsel, both
for plaintiff and defendant, in attempting to demonstrate
the facts at issue, and reliance seems to have been placed
upon the examination and inspection of such model by
the jury and the explanations made by the witnesses.
Not having that model before us, with the accompany-
ing explanations, it is difficult to clearly understand some
of the testimony in the record. There is no controversy,
however, as to the following facts:

The plaintiff was a section hand employed by the de-
fendant, and on the 17th day of May, 1900, while engaged
in the line of his duty, assisted in pushing a hand-car
from the main track upon a side-track on the defendant's
right of way near the village of DuBois, in Washington
county, for the purpose of allowing a mail train to pass.
As the engine of the approaching train came alongside
the hand-car it exploded, destroying the engine, and
throwing the fragments of the fire-box, crown-sheet and
other parts in different directions, one of which struck
the plaintiff upon his right knee, inflicting a serious in-

jury, for which he sues. The engine, which was numbered 915, had been in the use of defendant for several years. It was placed in the round-house of the company at Centralia about the 6th of May for repairs, and remained there until the 12th of that month, during which time, according to the testimony of employees of the defendant, it was repaired. One of the defects at that time was, that a number of the bolts necessary to hold the fire-box together had become cracked and broken. The division master mechanic, J. H. Pollard, testified that the engine was taken into the round-house on the 6th day of May, and says: "All the stay-bolts were renewed in the front sheet of the fire-box, and three on the right side and four on the left side of the fire-box." A great many of the bolts were not renewed, but the testimony of the defendant's witnesses is to the effect that by the application of usual and proper tests they were found to be in a safe condition. From the time the engine left the round-house on the 12th, prior to the explosion, it was not inspected.

It is well known that locomotive engines and boilers, when properly constructed, in good repair and skillfully handled do not explode. It is true that the particular defects or mismanagement resulting in explosions can not always be ascertained; but even that is not the common experience, and whenever an accident of that kind occurs the effective cause is usually discoverable. As before stated, witnesses who testified on behalf of the plaintiff in the present case examined the fragments or pieces of the fire-box and crown-sheet, and they testified that they found in them bolts which indicated, by their appearance, that they had been broken some time prior to the explosion, and also that they found bolts which had the appearance of what they call "slips,"—that is, the threads of the bolts had pulled off. The fire-box consists of two parts, the inner box in this case being several feet in dimensions either way, which was surrounded by an outer covering, there being a small space between

the two plates. The top of the inner box is called the crown-sheet, and the two surfaces or plates are bolted firmly together by stay-bolts passing through both plates, with screw threads on either end and projecting beyond the plates, on which heads were riveted, thus holding the parts firmly together both by the screws and riveted heads. These stay-bolts, of which there were a large number, were placed about four inches apart. Plaintiff's witnesses describe some of them as showing indications of having been broken prior to the explosion, and the evidence shows that in all railroad locomotives, as they are operated, the stay-bolts are liable to become broken or cracked. It was that defect, as already stated, in part, at least, which made it necessary to put the engine in question in the round-house on May 6. Notwithstanding the testimony of the defendant's witnesses tended to prove that the defects were all removed and the locomotive put in good repair, the fact remains that within a short time after it was again put in service it exploded, and if the testimony of the plaintiff's witnesses is to be believed, several of the bolts showed that they had been previously cracked or broken.

Taking these facts into consideration, we are of the opinion that it was a question for the jury to determine, under proper instructions, whether or not the broken bolts and slips, as testified to by those witnesses, caused, or contributed to the cause of, the explosion, and whether or not the defendant's mechanics, by the exercise of reasonable care, could have discovered their true condition, and whether or not those making the repairs between the 6th and 12th of May used all reasonable care and skill to discover, remove and replace with new bolts all those which may at that time have been defective, and it was also a question of fact for it to determine whether or not a sufficient number of the bolts were broken before the explosion to render the operation of the engine unsafe. Although a fire-box and boiler may be supplied

with a larger number of bolts than are really necessary to render the locomotive safe, as testified to by defendant's witnesses, still, how many bolts might be dispensed with without rendering it unsafe would always be a question of fact.

There was also testimony offered on behalf of the plaintiff to the effect that after the accident there was a deposit of mud found on the top of the crown-sheet from one-eighth of an inch to two inches in thickness, which had become very hard and dry, and which one witness testified he was unable to remove with his knife. The plaintiff's evidence also showed that some of the bolts had become so heated that when the explosion occurred the tops of them were pulled through the crown-sheet, inverting the heads. This deposit of mud was found on a part of the crown-sheet left inside the boiler as well as on that part of it that was blown some distance away. The fire-box is constructed, as above indicated, so as to allow the water from the boiler to circulate freely between the outer and inner plates, thus preventing the crown-sheet from becoming overheated. Any accumulation of mud or other substance on the crown-sheet which obstructs the effect of the water upon it allows it to become intensely heated, and so soft and ductile as to allow the stay-bolts to "slip" the threads and pull the heads through the plates. Inevitably, when this condition exists, the boiler becomes unsafe and liable to explode. All the testimony, both of the witnesses for plaintiff and defendant, is to the effect that when the boiler of a locomotive is clean and full of water the crown-sheet does not become overheated. From the fact that the top of this crown-sheet was encrusted with mud, which had become baked and hard, the reasonable inference is that the engine had not been kept reasonably clean, supplied with water and free from mud and sediment. It is true that witnesses on behalf of the defendant contradict, in the main, those of the plaintiff as to the appearance of

the bolts and the condition of the crown-sheet, but such testimony had no other effect than to raise a conflict in the evidence.    In fact, a Mr. Boyce, an employee of the defendant, testified that he was at DuBois the next morning after the explosion for the purpose of examining the wreck; that he saw the crown-sheet lying west of the bank, (which was evidently the one spoken of by witnesses for the plaintiff,) and that he found no indications of "any dangerous condition in the metal, of any kind." He does, however, say: "The piece of the side sheet, or almost the whole of the right side, that went out with the explosion, there were a few bolts near the center of the side sheet and the balance of the bolts were sticking on the outside of the boiler sheet, and a few showed up as though they were fractured.    There were six or eight bolts sticking in that sheet that showed that they were partly cracked at that time, but it showed a difference between the old and new bolts very plainly.    I couldn't find any bolts entirely broken off before the explosion. Those six or eight bolts that were partly broken before the explosion were on the inside sheet of the fire-box that blew out.    That would indicate that they were partly broken or partly cracked on the outside when they came out with the explosion, or they would have torn out like the rest had, and remained in the side sheet.    That showed that they had a slight crack in them, because the breaks are always on the outside sheet.    The bolts that stuck to the outside sheet indicates that they were first-class bolts, in perfect order.    If they had been cracked, the crack would have been next to the outside sheet. They would have followed the sheet that came out. I examined the top of the crown-sheet that remained in the engine.    There was no mud there any more than you can find in any engine running any length of time; simply a little scale—hard scale—there.    I examined it particularly, as I did all other parts."    We do not mean to be understood as saying that the witness did not

testify that in his opinion the fire-box, crown-sheet and boiler were in a safe condition, but only that he stated facts which, at least in some degree, corroborate the testimony of the witnesses for the plaintiff.

We think anyone carefully reading the testimony in this case and giving credence to that of plaintiff's witnesses as to the broken bolts, and especially the crown sheet being covered with mud, would rationally conclude that the explosion was caused by those defects, and that a careful and skillful operation of the locomotive would have discovered and removed the mud before it had accumulated and hardened to the extent described. At least we are not able to say that there was no evidence before the jury tending to support both counts of plaintiff's declaration, and therefore hold that the trial court committed no error in refusing to instruct the jury to find for the defendant.

Our examination of the various assignments of error upon which a reversal is asked, leads us to the conclusion that there is no reversible error in this record. The judgment of the Appellate Court will accordingly be affirmed.                                    *Judgment affirmed.*