[Civ. No. 8864. First Appellate District, Division One.—July 11, 1933.]

WINIFRED M. BAKER, Respondent, v. THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY (a Corporation), Appellant.

R. E. BAKER, Respondent, v. THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY (a Corporation), Appellant.

George J. Presley, Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Edward J. Lynch for Respondents.

THE COURT.—The plaintiffs in the above actions are husband and wife. Winifred M. Baker sues to recover damages for injuries sustained through the alleged negligence of defendant, and R. E. Baker for the loss of services of his wife and for medical expenses resulting from the said injury. The jury returned verdicts in favor of Winifred M. Baker in the sum of $10,000, and in favor of R. E. Baker for $1,000. Defendant filed motions for new trials and same being denied, judgments were rendered for plaintiffs for the aforesaid amounts, and from these judgments defendant appeals.

Appellant relies upon four points for reversal on this appeal. 1. That the Palo Alto Hospital was an eleemosynary institution and that appellant had exercised due care in selecting the hospital employees. 2. That appellant had no knowledge or notice of the defective condition of the lamp. 3. Erroneous instructions regarding charity doctrine and error of the court in refusing instructions requested by appellant. 4. The verdict in favor of Mrs. Baker is excessive.

"The courts of this country have almost unanimously arrived at the conclusion that hospitals organized for charitable purposes are not liable to their patients for injuries arising from the negligence of their employees, where reasonable care is used in the selection and retention of the employee." (Citing authorities). (*Stewart* v. *California Medical etc. Assn.*, 178 Cal. 418 [176 Pac. 46, 47].) ▮ In that case the court held that the true doctrine was that if a person accepts the benefit of a public or private charity he exempts, by implied contract, the benefactor from liability for the negligence of the servants in administering the charity if the benefactor has used due care in the selection of those servants. To the same effect is *Thomas* v. *German Gen. etc. Soc.*, 168 Cal. 183 [141 Pac. 1186], and the burden of proving that said hospital was a charitable one rests upon appellant. (*Lewis* v. *Young Men's Christian Assn.*, 206 Cal. 115 [273 Pac. 580]; *Inderbitzen* v. *Lane Hospital*, 124 Cal. App. 462 [12 Pac. (2d) 744, 13 Pac. (2d) 905].)

E. S. Erwin testified that he was the assistant comptroller of Stanford University; that the number of students was about 3,500; that their tuition fee ranged from $115 to $130 per semester, of which there were three during each year;

that $5 of this fee was turned over to the Students Guild for the purpose of paying the expenses of conducting the hospital; that when a student becomes ill and needs hospital attention he enters the hospital and pays part of the hospital expense, and the balance is paid out of this fund; that the regular rates of that hospital range from $5 per day for a ward, and from $6 to $8.50 per day for a room; that during the fiscal year of 1931 the operating profit of the hospital was $13,909.77. After paying bond interest and sinking fund payments, a balance of $8,959 remained. He further testified that there were no rules or regulations that permit service to be rendered free.

Miss M. Hindman, the assistant superintendent of the hospital, testified that the capacity of the hospital was 35, and that it was filled to capacity all of the time; that at times they received into said hospital patients who were not able to pay for the services rendered them, but were repaid for these services by a charitable organization, composed of ladies in Palo Alto, known as the Palo Alto Hospital Auxiliary; that the hospital furnished no free beds for which it stood the expense itself.

While the appellant corporation was created for the purpose of administering an educational trust, there is nothing in the acts of the legislature relative to the trust, or creating the corporation, or in the trust itself, which provides that any trust fund shall be used for the said hospital, nor were such funds ever so used. ■  A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons. (*Estate of Dol*, 182 Cal. 159 [187 Pac. 428]; *Estate of Sutro*, 155 Cal. 727, 736 [102 Pac. 920]; *Jackson* v. *Phillips*, 14 Allen (96 Mass.), 539, 556.) ■
The City of Palo Alto was the owner of said hospital and on July 1, 1921, by agreement it delivered possession of said hospital and its equipment to the Leland Stanford Junior University. It was provided in said agreement that during the month of July in each year a statement of the receipts and expenditures of said hospital should be made, and that after deducting the operating expenses and any working fund that might be agreed upon, the remainder of the receipts should be turned over to the said city. We are of the opinion that the Palo Alto Hospital was not formed and

maintained for charitable purposes. No charity was dispensed by it; on the contrary, the usual and customary rates charged by other hospitals were charged by it. It made no pretense of receiving patients unable to pay for the services rendered, except in some instances where the payment was guaranteed by the ladies of Palo Alto under the name of the Palo Alto Hospital Auxiliary, an independent organization. ■ In *Stewart* v. *California Medical etc. Assn.*, *supra*, it was held that a corporation organized for a public charity may also conduct an enterprise for gain and be liable for the negligence of its employees in such enterprise, although the profits derived therefrom are devoted to the general purpose of the charity.

■ Appellant next contends that it had no notice or knowledge of the defective condition of the lamp. Mrs. Baker testified that she was brought to the hospital on April 1, 1931, for an operation; that on April 2d the operation was performed; that for a few days after the operation she had a night and a day nurse, but on the advice of her physician she dispensed with the services of the night nurse; that about midnight of April 6th she awakened and, desiring the services of the floor nurse, pushed the button which was pinned to her pillow and which when pushed caused a red light to appear in the hallway occupied by the floor nurse; that for the convenience of the patient a heavy metal lamp was placed upon a table that stood against the bed; that she reached over with her right hand to turn on the light and received such a shock that she was powerless to release her hand from the lamp; that the floor nurse came into the room shortly thereafter and seeing her condition severed the connection between the lamp and the electric current and thereby released Mrs. Baker's hand from the lamp.

Dr. Wilbur testified that he was connected with the university and that he was one of the staff of the hospital; that he was one of the physicians who attended Mrs. Baker when she was brought to the hospital; that she was placed in room No. 208. On his direct examination he testified that two or three days before the accident he saw the lamp in this room and at that time observed that a portion of the insulation on and surrounding the key which served to turn on the light was broken off, and in answer to a question of the court he stated that he knew this of his own personal

knowledge. He further stated the break exposed the metal on the key and that this condition. had existed for two or three days before the accident; that he was called a short time after the accident and at that time examined the lamp and found it in the same condition relative to the break that existed before. On cross-examination he testified that he did not personally examine the lamp in room No. 208 before the accident; that he saw a defective lamp in room No. 212 two or three days before the accident and that he called the attention of a nurse to it and requested her to have it repaired. On redirect examination he testified the insulation on the defective lamp in room No. 212 was broken in the same way as was the lamp in room No. 208, and in every way it appeared to be the same lamp. He further stated that at times the nurses brought lamps from one room to another. There was also evidence that the said broken insulation was plainly visible and that no defective lamp was repaired until after the said accident.

T. Collins, a witness for defendant, testified that he was custodian of the hospital; that he was called to room No. 208 the night of the accident and saw the lamp; that the insulation was broken off of the switch that turned the light on; that a person attempting to turn the light on would receive a terrible shock.

Where the duty exists to inspect and maintain property in a safe condition, the presence of a conspicuous defect or dangerous condition of the appliances which has existed for a considerable length of time will create a presumption of constructive notice thereof. (*Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal. App. 422 [283 Pac. 353]; *Linforth* v. *San Francisco Gas & Electric Co.*, 156 Cal. 58 [103 Pac. 320, 19 Ann. Cas. 1230].) Section 2332 of the Civil Code provides that: ''As against a principal, both principal and agent are deemed to have notice of whatever either has notice of. . . . '' (1 Cal. Jur. 847.) Therefore if appellant or its agents had knowledge of the defective condition of the lamp, or by the exercise of reasonable care would have known of such defective condition, appellant was guilty of negligence. (*Ocean Steamship Co.* v. *Matthews*, 86 Ga. 418 [12 S. E. 632]; *Paine* v. *Eastern R. Co. of Minnesota*, 91 Wis. 340 [64 N. W. 1005]; *Illinois Central R. R. Co.* v. *Behrens*, 208 Ill. 20 [69 N. E. 796].) There is evidence from which

the jury could conclude that this defect in the lamp existed for two or three days before the accident, and that the defect was patent and obvious. Ordinarily the question of whether or not due care has been exercised to inspect electric equipment to discover defects in the appliances is a matter to be determined by the jury. (*Roberts* v. *Pacific Gas & Electric Co., supra;* 9 R. C. L. 1218; 1 Joyce on Electric Law, p. 726.) We are of the opinion that there was sufficient evidence to support the verdict of the jury finding appellant guilty of negligence.

Appellant also contends that the verdict in favor of Mrs. Baker is excessive. She was fifty-one years of age at the time of the accident and had an expectancy of life of nineteen years. She received a third degree burn to her right hand. It was necessary to amputate her little finger and remove some of the bones in the hand, which has impaired its usefulness one-half to three-fourths. She also received a very severe electric shock which has resulted in seriously affecting her nervous system. Prior to receiving the injury she did her household work and her own sewing, played the trombone, accordion and piano, and did designing and painting. Since the accident she has been unable to do any of these things, nor will she be able to do them in the future. At the time the injury was inflicted she suffered great pain and still suffers pain to an extent. The amount of damages is committed to the sound discretion of the jury, and next, to the discretion of the judge of the trial court who, in ruling upon the motion for new trial, may consider the evidence anew and set aside the verdict if it is not just. Upon appeal the decision of the trial court and the jury on the subject cannot be set aside unless the verdict is so plainly and outrageously excessive as to suggest at first blush, passion or prejudice or corruption on the part of the jury. (*Hale* v. *San Bernardino Valley Traction Co.,* 156 Cal. 713 [106 Pac. 83]; *Lahti* v. *McMenamin,* 204 Cal. 415 [268 Pac. 644].) We cannot say under the conditions shown to exist in this case that the verdict is excessive.

Appellant complains of the action of the trial court in refusing to give certain instructions asked by it. We have examined the instructions and are of the opinion that those given by the court fully and fairly submitted the issues to

the jury, and that no error was committed by the court in refusing to give the said instructions asked by appellant.

The judgments are affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 10, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 6, 1933.