[Civ. No. 11036.  Second Appellate District, Division Two.—October 1, 1936.]

CHARLES E. ENGLAND, Appellant, v. HOSPITAL OF THE GOOD SAMARITAN (a Corporation), Respondent.

William K. Young for Appellant.

Gibson, Dunn & Crutcher, Philip C. Sterry and George D. Jagels for Respondent.

WOOD, J.—Plaintiff sought a judgment against defendant for damages for injuries suffered on October 16, 1935, while he was a patient in the hospital operated by defendant. It is claimed that a nurse employed by defendant to care for plaintiff negligently placed hot water bottles against plaintiff's leg in such manner as to cause third degree burns. When plaintiff finished the presentation of evidence the trial court upon motion of defendant directed the jury to return a verdict in defendant's favor. From the resulting judgment plaintiff prosecutes this appeal.

By presenting a motion for a directed verdict defendant concedes as true the evidence in behalf of plaintiff with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.*, v. *Barnard*, 77 Cal. App. 709 [247 Pac. 597].) Considering plaintiff's evidence in the light of this rule the following facts may be considered as established: Plaintiff applied for admission to defendant's hospital and was received as a patient paying the customary rate, the amount quoted by defendant's cashier. He was injured through the negligence of a nurse assigned to care for him by defendant. The articles of incorporation of defendant provide that the hospital "shall be conducted under the auspices of the Protestant Episcopal Church . . . " The by-laws, as amended June 20, 1921, provide that "the corporation is organized not for profit, but for the purpose of establishing and maintaining an institution under Christian influence, for the training of nurses, and for the care of the sick, including those who are unable to pay wholly or in part for medical or surgical aid". Defendant's hospital is one of the larger hospitals of the city of Los Angeles. Defendant operated for profit a number of departments to which the public had access, such as pharmacy, lunch-counter and soda fountain, including magazines and toilet articles. In 1935, the year in which plaintiff was injured, defendant realized a profit of $62,767 from operations. Defendant's earned surplus on January 1, 1931, was $142,720. Continuous operations were carried on thereafter and on December 31, 1935, the earned surplus was $65,464. During 1935 defendant cared for 7,672 patients. Of this number 191 were free patients and most of these were physicians, nurses or clergymen, or members of their families. Of

the total number, 354 patients paid less than the established rates, some of them having been cared for at a financial loss. The amount paid by the last-mentioned class does not appear in the record. Defendant has no fixed or established rule either verbal or written governing the admission of nonrevenue patients. The admission of such patients rests in the discretion ·of defendant's secretary-treasurer. No showing was made that plaintiff was aware that defendant claimed to be a charitable institution or that it claimed to be free from liability for negligence on the part of its employees.

The general rule applicable to those receiving benefits from charitable institutions is stated in *Stewart* v. *California Medical etc. Assn.*, 178 Cal. 418 [176 Pac. 46]: "The true doctrine amounts to this: that where one accepts the benefit of a public or of a private charity, he exempts by implied contract the benefactor from liability for the negligence of the servants in administering the charity, if the benefactor has used due care in the selection of those servants." In the Stewart case the defendant claimed exemption from liability on account of the charitable nature of its work. Its articles of incorporation provided that "all of which work and acts shall be done without pecuniary profit or dividend, direct or indirect to any person". In that case the trial court found that no charity patients would be received or had been received or treated except by previous arrangement and that the plaintiff "did not know or believe that the defendant owned the sanitarium in question, or that it was carried on or run as a charitable institution, but that plaintiff believed that she was dealing with the St. Helena Sanitarium, and in all her dealings she had no knowledge that it was or claimed to be a charitable institution, and that she paid the full price for the operation and all treatment and for the room furnished to her, and was not the recipient of any charity". In upholding a judgment for the plaintiff the court said: "The character of the institution is to be determined not alone by the powers of the corporation as defined in its charter, but also by the manner of conducting the hospital . . . the declarations in the articles alone are insufficient to establish the character of the St. Helena Hospital as a public charity, and the evidence of the

manner it was conducted shows that it was not . . . In the instant case, we hold that the trial court was required to look not only to the defendant's articles of incorporation and by-laws, to determine the character of the hospital conducted by it, but also to the method of transacting the business of the corporation. Its finding that the hospital was in fact operated for profit is supported by the evidence, and we see no good reason for exempting the defendant from the liability incurred by other hospitals conducted for profit." In discussing the several theories on which the nonliability of charitable corporations is based and the doctrine of nonliability the court stated: "It may be noted, however, that if this rule is followed, the defendant could hardly claim to be thereby relieved of responsibility, for the reason that the plaintiffs had no knowledge whatever of the charitable character of the organization." In *Baker* v. *Board of Trustees etc.,* 133 Cal. App. 243 [23 Pac. (2d) 1071], the court referred to the Stewart case, saying: "In *Stewart* v. *California Medical etc. Assn., supra,* it was held that a corporation organized for a public charity may also conduct an enterprise for gain and be liable for the negligence of its employees in such enterprise, although the profits derived therefrom are devoted to the general purpose of the charity." In *Hallinan* v. *Prindle,* 220 Cal. 46 [29 Pac. (2d) 202], the Stewart case was referred to with approval: "The character of the corporation, however, is to be determined not alone by its powers as defined in its charter, but also by the method of transacting the business of the hospital."

We cannot hold that one who, without knowledge that a hospital claims to be a charitable institution and therefore exempt from liability, applies for admission and is received as a patient, paying the regular rates at which the hospital derives a profit, is without redress for injuries occasioned by negligence on the part of the employees of the hospital on the theory that he is accepting the benefits of charity from a benefactor. Our conclusiion is in line with the decision in the Stewart case. The trial court erred in refusing to submit to the jury the issue of plaintiff's claim that the hospital was conducted for profit and defendant's claim that it was operated only for charity.

The court should also have submitted to the jury under appropriate instructions the question of plaintiff's knowledge of defendant's claim to nonliability on account of its charitable activities.

Defendant refers to *Stonaker* v. *Big Sisters Hospital,* 116 Cal. App. 375 [2 Pac. (2d) 520]; *Ritchie* v. *Long Beach Community Hospital Assn.,* 139 Cal. App. 688 [34 Pac. (2d) 771]; *Shane* v. *Hospital of the Good Samaritan,* 2 Cal. App. (2d) 334 [37 Pac. (2d) 1066]. The decisions in these cases are based upon the general rule that one who accepts the benefits of a charity impliedly exempts the benefactor from liability. Nothing is contained in any of the decisions referred to which negatives the rule that the owners of the hospital are liable for negligence if the hospital is in fact operated for profit. No proof was offered in any of these cases to establish operation of the hospitals for profit. All were decided on the theory that the charitable nature of the institutions was established without question.

Plaintiff contends that he presented sufficient proof that defendant did not use due care in the selection of its employees and that regardless of the determination of the question above discussed he was entitled to have the issue submitted to the jury. This contention must be upheld. Evidence was introduced upon which a finding could be predicated that the negligence of the attending nurse had occasioned plaintiff's injuries. The director of defendant's nursing service testified that the nurse in question had submitted a written application for employment but that the references therein had never been checked; that she commenced work on April 21, 1935, and that no inquiry was made of the bureau of nurses of the state department of health with respect to her standing. The chief of the bureau of registration of nurses of the state of California testified that said nurse filed an application for registration as a nurse in California on March 8, 1935; that on March 11, 1935, she was rejected for registration on the ground that she was ineligible. A written notice of rejection was forwarded to her in which it was stated: "We find that the hospital with which your school of nursing was connected was too small to meet the California requirements and that you did not have the affidavit executed on your application.

If you wish to qualify for registration in California, you may do so by completing a six months' post graduate course, three months of which must be spent in pediatric nursing and one month in obstetrical nursing.'' The evidence was sufficient to call for the submission to the jury of the question whether defendant had used due care in employing the nurse who attended plaintiff.

The judgment is reversed.

Gould, J., *pro tem.*, and Crail, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 30, 1936. Langdon, J., voted for a hearing.