(No. 6484. June 23, 1938.)

DONNA IRENE WILCOX, a Minor Who Sues by Her Guardian Ad Litem, GURNEY WILCOX, Respondent, v. IDAHO FALLS LATTER DAY SAINTS HOSPITAL, a Corporation, and FRANCES LONG, Appellants.

[82 Pac. (2d) 849.]

Merrill & Merrill, Attorneys for Appellant Hospital, and
A. A. Merrill, Attorney for Appellant Long.

Otto E. McCutcheon and Anderson, Bowen & Anderson, Attorneys for Respondent.

MORGAN, J.—Respondent, a child two years and two months old, was taken by her father and mother to Idaho Falls Latter Day Saints Hospital for treatment for pneumonia. Arrangements were made by her father with the hospital, acting through one of its agents, for a room for respondent and for her care and treatment therein, for which he agreed to pay. Her physician directed that she be given diathermic treatments and the work of giving them was assigned to appellant, Frances Long, who was a student nurse in the hospital. While one of these treatments was being given by appellant Long respondent was severely burned by electricity used in giving it. The burning is alleged by respondent to have been caused by the negligence of appellant Long while acting in her capacity as a nurse employed by appellant hospital. The trial resulted in a verdict and judgment in favor of plaintiff and defendants have appealed from the judgment and from an order denying a new trial.

Appellants filed separate briefs in which errors are assigned presenting numerous questions, two of which we deem it necessary to discuss. The record discloses that in respondent's treatment, after she was burned, a skin grafting operation became necessary. Her mother testified, with respect to the operation, and both appellants have assigned as error the court's rulings as to the admissibility of the following part of her testimony:

"Q. Were you present, Mrs. Wilcox, when any skin grafting was done on the child?

"A. Yes, I was present in the operating room.

"Q. Did you actually see it?

"A. Yes, I saw it.

"Q. State what was done.

Mr. MERRILL: "I object to that. She might state what she saw.

Mr. BOWEN. "Q. State what you saw, Mrs. Wilcox. Change the question.

"A. Our little boy, who is—

Mr. MERRILL: "Just a minute. I object to that on the ground it is immaterial, and not responsive to the question asked.

"A. —he—

Mr. BOWEN: "Just a minute.

The COURT: "She may answer. Proceed.

"A. The little boy gave his skin to his sister. We went in the operating room; they took Donna to the operating room on the bed, on a rolling bed; and the little boy was given gas—

Mr. MERRILL: "I move that that be stricken as not responsive; and also that it be stricken as to what the little boy did, as not responsive, and immaterial in this lawsuit.

"A. He seemed to suffer—

Mr. BOWEN: "Just a minute.

Mr. MERRILL: "I move that interjection be stricken as improper.

The COURT: "I think she may answer.

"A. The little boy was laid on one table, one operating table, and the little girl was waiting on another table. The skin was taken off of the forepart of the little boy's leg, the fleshy part of his leg. It was quite an agony for me to go through; I mean for me to see.

Mr. MERRILL: "I move that that last be stricken as not responsive.

Mr. BOWEN: "Q. Just take your time.

The COURT: "The last remark may be stricken.

"A. And it was carried piece by piece—oh, there was four or five pieces taken from the boy's leg, and placed on the back, placed on this burn."

 Evidence that a skin grafting operation was made necessary by the burn, and the extent of it, was relevant and material, but testimony detailing the circumstances of the operation, and as to the apparent suffering of the boy, was irrelevant and immaterial and was prejudicial to the rights of appellants. The action was for damages to respondent, not to her brother.

The other question which we will discuss, in order that the district judge may have the benefit of our views with respect to it when the case is tried again, is presented by the assignments of error by appellant, Idaho Falls Latter Day Saints Hospital, and has to do with a defense, of which it attempted to avail itself, to the effect that it is a charitable institution and cannot, therefore, be made liable for injuries arising out of the negligence or misconduct or its agents or employees; also, that it had, at all times, exercised due and

reasonable care in the selection of its employees, including its codefendant, Frances Long.

With respect to this question, respondent relies on *Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, and, apparently, the trial judge has been led into error by the discussion therein, *unnecessary to the decision*, of certain cases involving charitable institutions. In that case, a patient in the county's hospital recovered damages for injuries sustained by her, alleged to have been due to the negligence of a nurse employed by the county in its hospital. That case is distinguishable from this one by the fact that the county, in conducting its hospital, was not engaged in administering a charity and, therefore, the legal rules governing charitable institutions do not apply to it.

I. C. A., Title 30, chapter 29, makes provision for the care of indigent sick persons by counties. Sec. 30–2904 permits any sick or indigent person desiring aid from a county to make application therefor to the probate judge, the clerk of the board of county commissioners, or a justice of the peace in the precinct where the applicant resides. Sec. 30–2905 requires the officer to whom the application is made to investigate the grounds thereof and if such officer is fully satisfied that the applicant "is really sick, indigent and in destitute circumstances, and would suffer unless aided by the county, he must file a certificate to that effect with the clerk of the board of county commissioners of such county, . . . . " Sec. 30–2906 is as follows:

"The county commissioners of such county must, after the filing of the certificate as aforesaid, if in their judgment the applicant is sick and indigent, and would suffer if not aided by the county, make such provisions for his relief as may be necessary under the circumstances."

Sec. 30–3301 provides:

"The boards of county commissioners in their respective counties shall have the jurisdiction and power under such limitations and restrictions as are prescribed by law, to provide for the care and maintenance of the indigent sick or otherwise dependent poor of the county; to erect, purchase, lease or otherwise acquire, and to officer and maintain hospitals, hospital grounds and equipment therefor; . . . . "

Sec. 30–3303 contains this provision:

"Such hospital may suitably provide for, and accept other patients insofar as their facilities will permit and may charge and accept payments from such of their patients as are able to make payments for services rendered and care given."

 The latter section gives a county the right to accept patients in its hospital, if its facilities permit, who are able to pay for hospitalization. If it does so, it renders itself liable to such patients, the same as the owner of a private, noncharitable hospital would be, for damage resulting from negligence.

 In providing for the care and comfort of its indigent sick, the county is not extending charity, it is performing a duty prescribed by law. The indigent sick, who receive benefits thus provided, are not recipients of charity. The county furnishes them maintenance and hospitalization, when necessary, in obedience to a state law. Distinguished from the activities of a county, in this particular, a charitable institution extends charity to those needing and deserving it, not because of a law requiring it to do so, but because of the charitable inclinations of those promoting it, or having the administration of its purposes in charge.

Whether a patient who has paid, or has obligated himself to pay, for maintenance, nursing and care in a charitable hospital may maintain an action against it for injuries resulting from the negligence of its agents and employees and, if so, upon what theory the liability is based, are questions which have occasioned much judicial discord in this country. The Supreme Court of Rhode Island, in *Glavin v. Rhode Island Hospital*, 12 R. I. 411, 34 Am. Rep. 675, laid down a rule thus stated in the syllabus:

"One who sustains injury at a public hospital from unskillful surgical treatment by an unpaid attending surgeon may maintain an action against the hospital therefor, although the hospital is a public charity, supported by trust funds, and the plaintiff paid nothing but a small amount for board and attendance."

That doctrine has been adopted in Alabama in *Tucker v. Mobile Infirmary Assn.*, 191 Ala. 752, 68 So. 4, L. R. A. 1915D, 1167. The syllabus of that case is:

"A paying patient in a hospital conducted without stock or profit, in which indigent patients are treated without cost,

and the fees exacted from patients who can pay are used`in promoting the work, may recover damages for injury done him through the negligence of an attending nurse."

The Supreme Court of Oklahoma, in *City of Shawnee v. Roush*, 101 Okl. 60, 223 Pac. 354, supported the doctrine as stated by the Alabama court in the Tucker case, and the Supreme Court of Minnesota may also be listed with the courts holding hospitals, organized and operated for charitable purposes, liable for the negligence of their servants in caring for patients who have paid, or obligated themselves to pay, for treatment therein. (See *Mulliner v. Evangelischer Diakonniessenverein, etc.*, 144 Minn. 392, 175 N. W. 699; *Borwege v. City of Owatonna*, 190 Minn. 394, 251 N. W. 915.)

The weight of authority is decidedly against the theory that a hospital supported in part by donations and operated for charitable purposes, is liable for damages resulting to a paying patient from the negligence of its employees. Counsel for appellant hospital has furnished, for our consideration, this list of cases which follow the rule that such corporations are exempt from liability under such circumstances: *Southern Methodist Hospital and Sanatorium v. Wilson*, 45 Ariz. 507, 46 Pac. (2d) 118; *Burdell v. St. Luke's Hospital*, 37 Cal. App. 310, 173 Pac. 1008; *Armstrong v. Wallace*, 8 Cal. App. (2d) 429, 47 Pac. (2d) 740; *Hallinan v. Prindle*, 17 Cal. App. (2d) 656, 62 Pac. (2d) 1075; *Baker v. Board of Trustees of Leland Stanford Jr. University*, 133 Cal. App. 243, 23 Pac. (2d) 1071; *Levy v. Superior Court*, 74 Cal. App. 171, 239 Pac. 1100; *Brown v. St. Luke's Hospital Assn.*, 85 Colo. 167, 274 Pac. 740; *Sibilia v. Paxton Memorial Hospital*, 121 Neb. 860, 238 N. W. 751; *Mikota v. Sisters of Mercy*, 183 Iowa, 1378, 168 N. W. 219; *Walsh v. Sisters of Charity of St. Vincent's Hospital*, 47 Ohio App. 228, 191 N. E. 791; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235; *Tribble v. Missionary Sisters of Sacred Heart*, 137 Wash. 326, 242 Pac. 372; *Thurston County Chapter, etc., v. Department of Labor, etc.*, 166 Wash. 488, 7 Pac. (2d) 577; *Bise v. St. Luke's Hospital*, 181 Wash. 269, 43 Pac. (2d) 4; *Schumacher v. Evangelical Deaconess Soc.*, 218 Wis. 169, 260 N. W. 476; *Parks v. Northwestern University*, 218 Ill. 381, 75 N. E. 991, 4 Ann. Cas. 103, 2 L. R. A., N. S., 556; *Powers v. Massachusetts Homoeopathic Hospital*, 109 Fed. 294; *Hearns v.*

*Waterbury Hospital,* 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; *Beverly Hospital v. Early,* (Mass.) 197 N. E. 641, 100 A. L. R. 1338; *Roosen v. Peter Bent Brigham Hospital,* 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563; *Downs v. Harper Hospital,* 101 Mich. 555, 60 N. W. 42, 45 Am. St. 427, 25 L. R. A. 602; *Ward v. St. Vincent's Hospital,* 23 Misc. 91, 50 N. Y. Supp. 466; *Eighmy v. Union Pac. Ry. Co.,* 93 Iowa, 538, 61 N. W. 1056, 27 L. R. A. 296; *Union Pac. Ry. Co. v. Artist,* 60 Fed. 365, 23 L. R. A. 581; *Duncan v. Nebraska Sanitarium & Benev. Assn.,* 92 Neb. 162, 137 N. W. 1120, Ann. Cas. 1913E, 1127, 41 L. R. A., N. S., 973; *Taylor v. Protestant Hospital Assn.,* 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A., N. S., 427; *Gable v. Sisters of St. Francis,* 227 Pa. 254, 75 Atl. 1087, 136 Am. St. 879; *St. Vincent's Hospital v. Stine,* 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361; *Bishop Randall Hospital v. Hartley,* 24 Wyo. 408, 160 Pac. 385, Ann. Cas. 1918E, 1172; *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512; *Cook v. John N. Norton Memorial Infirmary,* 180 Ky. 331, 202 S. W. 874, L. R. A. 1918E, 647; *Loeffler v. Trustees of Sheppard & Enoch Pratt Hospital,* 130 Md. 265, 100 Atl. 301, L. R. A. 1917D, 967; *Schloendorff v. Society of New York Hospital,* 211 N. Y. 125, 105 N. E. 92, Ann. Cas. 1915C, 581, 52 L. R. A., N. S., 505; *Hoke v. Glenn,* 167 N. C. 594, 83 S. E. 807, Ann. Cas. 1916E, 250; *Candal De Lopez v. Sociedad Espanolo de Auxilio, etc.,* 45 Fed. (2d) 331; *Roberts v. Ohio Valley General Hospital,* 98 W. Va. 476, 127 S. E. 318, 42 A. L. R. 968; *Jensen v. Maine Eye & Ear Infirmary,* 107 Me. 408, 78 Atl. 898, 33 L. R. A., N. S., 141; *Adams v. University Hospital,* 122 Mo. App. 675, 99 S. W. 453; *Nicholson v. Atchison, Topeka & Santa Fe Hospital Assn.,* 97 Kan. 480, 155 Pac. 920, L. R. A. 1916D, 1029; *Mississippi Baptist Hospital v. Moore,* 156 Miss. 676, 126 So. 465, 67 A. L. R. 1106; *Steele v. St. Joseph's Hospital,* (Tex. Civ. App.) 60 S. W. (2d) 1083.

The cases holding hospitals, operated in the interest of charity, exempt from liability for damages resulting from negligence of their employees, are in disagreement as to the theory on which the exemption rests. The different theories are thus classified in 13 Ruling Case Law, 945: "(1) Public policy; (2) that the assets or funds of the institution are impressed with a trust for charitable purposes and may not be

diverted to other use; (3) that in so far as concerns patients voluntarily entering, whether as pay or as charity patients, they impliedly waive all claim for injuries and assume the risk thereof.'' The cases holding such hospitals exempt from liability to their patients, for damages resulting from negligence of their employees, are agreed that payment by a patient for accommodations in the hospital, and for services rendered him, is not controlling. The different theories, above mentioned, are discussed as follows in 13 Ruling Case Law, commencing on page 945:

''9. *Immunity on Ground of Public Policy.*—The theory on which those cases holding hospitals immune from liability to patients on the ground of public policy proceed, is that as such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, sick and needy, the common welfare requires that they should be encouraged in every way and held exempt from liability for tort; that to do otherwise would operate to discourage the charitably inclined, dissipate the assets of such institutions in damage suits, and ultimately, perhaps, destroy them. In answer to this argument, however, it has been said that while the public has an interest in the maintenance of a great public charity, it also has an interest in obliging every person and corporation which undertakes the performance of a duty to perform it carefully, and to that extent therefore it has an interest against exempting any person and any such corporation from liability for its negligence, and that moreover it is solely for the legislature, and not for the courts to say that the former interest is so supreme that the latter must be sacrificed to it. While this doctrine has been criticised by weighty *obiter,* with express reference to the fact that the legislature of the state wherein it was promulgated promptly changed the law, it is nevertheless true that public policy as a ground of immunity has been disapproved in a number of cases.

''10. *Trust Fund Doctrine.*—The trust fund doctrine in brief is that a trust fund cannot be made liable for breaches of trust by the trustees. The *rationale* of the doctrine as applied to hospitals, as a basis of immunity from suit is that if the charity or trust fund could be used to compensate injured parties for the negligence of the agents or servants of

the hospital, the fund would be diverted to purposes never intended by the donor, and the charitable purposes of the creators or founders frustrated. The doctrine has, however, met with very general disapproval in the United States, it having been said that if in their dealings with their property appropriated to charity individuals or corporations 'create a nuisance, dig pitfalls or the like, there are strong reasons for holding them liable to outsiders like any other individual or corporation. The purity of their aims may not justify their torts.' The doctrine has also been strongly disapproved on the ground that when a corporation or *quasi* corporation is created for certain purposes which cannot be executed without the exercise of care and skill, it becomes the duty of the corporation or *quasi* corporation to exercise such care and skill, and the fact that it acts gratuitously, and has no property of its own in which it is beneficially interested, will not exempt it from liability for any neglect of the duty, if it has funds, or the capacity of acquiring funds, for the purposes of its creation, which can be applied to the satisfaction of any judgment for damages recovered against it, and the corporate funds can be applied, notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them.

"11. *Implied Waiver by Acceptance of Benefits.*—The theory favored by the better reasoned cases as a basis for the general immunity of hospitals from suit is implied waiver by acceptance of benefits. The doctrine is that one who accepts the benefit either of a public or private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. In such cases there is an assumption of risk by the patient who seeks and receives the services of a public charity. This principle, which may be said to be the modern prevailing rule with regard to a hospital's liability to its patients has the support of numerous cases. It can be applied, however, only where it can fairly be said that the person injured is the recipient of the institution's benefits, and would not apply to strangers or others dealing with it in some other relation. It applies, it has been said, to a paying as well as to a nonpaying patient in a hospital operating as a charitable institution. . . . . "

Then follows a statement of the theory entertained by courts holding hospitals liable for injuries to their paying patients resulting from negligence of their employees, although the corporations conducting such hospitals were organized without stock, not for profit, and although indigent patients were treated therein without cost, and money collected from patients who paid was applied to promoting the charitable work. The cases so holding have been heretofore cited and, as pointed out, they are against the weight of authority.

A valuable note entitled, "Liability of privately conducted charity for personal injuries" will be found in 14 A. L. R. 572. Therein the decisions following the various theories for exemption from liability to beneficiaries of charitable institutions are assembled.

▉▉ ▉ A careful study of the authorities on this subject has convinced us that a hospital, conducted in the interest of charity, is exempt from liability to its paying patients who have suffered injury due to the negligence of its employees, and that the true rule for the exemption is the one stated by Justice Cardozo in *Schloendorff v. Society of New York Hospital*, 211 N. Y. 125, 105 N. E. 92, 93, Ann. Cas. 1915C, 581, 52 L. R. A., N. S., 505, as follows:

"It is said that one who accepts the benefit of a charity enters into a relation which exempts one's benefactor from liability for the negligence of his servants in administering the charity."

See, also, *Powers v. Massachusetts Homoeopathic Hospital*, 109 Fed. 294, 65 L. R. A. 372; *St. Vincent's Hospital v. Stine*, 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361; *Adams v. University Hospital*, 122 Mo. App. 675, 99 S. W. 453; *Basabo v. Salvation Army*, 35 R. I. 22, 85 Atl. 120, 42 L. R. A., N. S., 1144; *Armstrong v. Wallace*, 8 Cal. App. (2d) 429, 47 Pac. (2d) 740.

▉▉ A number of courts have limited the rule of exemption of charitable hospitals, from liability for injuries to their patients caused by the negligence of their employees, by a proviso that due care has been used in the selection of said employees. The application of the rule should not be so limited. Such a hospital is not liable for injuries resulting to its patients for negligence on the part of its manager in employing and retaining inefficient employees. The idea that such a hospital might become liable for injuries to its patients,

due to negligence on the part of its employees if due care had not been exercised in their selection, appears to have arisen from the decision by the Supreme Judicial Court of Massachusetts, in *McDonald v. Massachusetts General Hospital*, 120 Mass. 432, 21 Am. Rep. 529. With respect to that decision, the Massachusetts court, in *Roosen v. Peter Bent Brigham Hospital*, 235 Mass. 66, 126 N. E. 392, 394, 14 A. L. R. 563, said:

"The case at bar presents, as one of its main questions, whether a hospital can be held liable for the negligence of its managing officers in selecting incompetent servants and agents. In *McDonald v. Massachusetts General Hospital*, 120 Mass. 432, 21 Am. Rep. 529, occurs this cautious statement:

" 'The liability of the defendant corporation can extend no further than this; if there has been no neglect on the part of those who administer the trust and control its management, and if due care has been used by them in the selection of their inferior agents, even if injury has occurred by the negligence of such agents, it cannot be made responsible.'

"In substance this has been repeated in several subsequent decisions and in numerous adjudications by other courts where that decision has been cited. That sentence now is seized upon as a basis for the argument that such a charitable corporation as a hospital should be held liable in damages for negligence of its managing officers in selecting incompetent subordinate agents. That sentence, however, was merely precautionary. It bounded the question presented by the facts then before the court. It simply showed the extent of the decision. It does not purport to be a comprehensive or exclusive statement. The correlative assertion, to the effect that there is liability of the hospital in cases where there has been carelessness on the part of the managers in the selection of servants and agents, is neither expressed nor implied. . . . . There is no sound distinction in reason between the liability of a hospital for the negligence of its inferior agents and its liability for the carelessness of its managers. The conduct of both relates to the execution of the charity."

See, also, *Basabo v. Salvation Army*, 35 R. I. 22, 85 Atl. 120, 42 L. R. A., N. S., 1144; *Adams v. University Hospital*, 122 Mo. App. 675, 99 S. W. 453; *Schumacher v. Evangelical Deaconess Soc.*, 218 Wis. 169, 260 N. W. 476.

Appellant hospital offered its articles of incorporation and an amendment thereto in evidence, and they

were rejected. It had alleged, as an affirmative defense, that it was a charitable institution, and the burden was on it to establish that fact. The exhibits should have been admitted to show the purpose for which the corporation was organized. (*Walsh v. Sisters of Charity of St. Vincent's Hospital*, 47 Ohio App. 228, 191 N. E. 791; *Southern Methodist Hospital and Sanatorium v. Wilson*, 45 Ariz. 507, 46 Pac. (2d) 118.)

In a case of this kind the articles of incorporation of a hospital, introduced in evidence, establishes its character, whether charitable or not, *prima facie*, for it will be presumed it is conducting its business according to the declarations contained therein. That, however, is a disputable presumption and the fact, if it be a fact, that its business is being conducted in a manner inconsistent with the declarations in its articles of incorporation, may be shown. (*Stewart v. California Medical M. & B. Assn.*, 178 Cal. 418, 176 Pac. 46; *Levy v. Superior Court*, 74 Cal. App. 171, 239 Pac. 1100; *Baker v. Board of Trustees of Leland Stanford Jr. University*, 133 Cal. App. 243, 23 Pac. (2d) 1071; *Armstrong v. Wallace*, 8 Cal. App. (2d) 429, 47 Pac. (2d) 740; *England v. Hospital of the Good Samaritan*, 16 Cal. App. (2d) 640, 61 Pac. (2d) 48, Id., 22 Cal. App. (2d) 226, 70 Pac. (2d) 692.)

The judgment and order appealed from are reversed and the cause is remanded to the district court with direction to grant a new trial. Costs are awarded to appellants.

Ailshie, J., concurs.

HOLDEN, C. J., Concurring and Dissenting.—I concur in holding that evidence of pain suffered by the brother of respondent was prejudicial. On the question as to whether a charitable institution is liable to a pay patient for the negligence of its servants there is much contrariety of judicial opinion, but to hold that a charitable institution is not liable to pay patients for injuries caused by the negligence of its servants, even in those instances where it has not exercised due care in their selection, is going too far.

BUDGE, J., Concurring in Part and Dissenting in Part.— I concur in the foregoing very able and exhaustive opinion prepared by Mr. Justice Morgan, except that portion of the

opinion which discusses and thereby seeks to distinguish *Henderson v. Twin Falls County,* 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, from the case at bar, and as to that portion of the opinion I am unable to concur.

GIVENS, J., Concurring and Dissenting.—I concur in the portion of the opinion holding that the evidence as to the pain caused the brother of respondent Donna Irene Wilcox, was prejudicial, and that a charitable hospital is not responsible for the negligence of its employees even to a pay patient. I dissented in *Henderson v. Twin Falls County,* 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, and still dissent from the doctrine there announced, and I do not concur with the portion of the opinion herein holding that a charitable hospital is not liable for injuries caused to its patients due to negligence on the part of its employees if due care has not been exercised in their selection.

ON REHEARING.

(September 28, 1938.)

A petition for rehearing was filed and granted herein. The case has been reargued and, the court being fully advised, adheres, except Holden, C. J., to the views heretofore expressed and to the decision heretofore rendered.

HOLDEN, C. J.—Upon a careful re-examination of the law applicable to the facts of this case, I adhere to the view that the trial court erred in admitting testimony of the apparent suffering of respondent's little brother while undergoing an operation for the removal of living skin for transplanting to the burned surface of the body of respondent. While there is much contrariety of judicial opinion on the question as to whether a charitable institution is liable to pay patients for the negligence of its nurses, it is my view that whether it be a county operating a hospital for the primary purpose of supplying hospitalization to indigents, in the discharge of a governmental duty, or an institution operating a hospital for the primary purpose of supplying hospitalization to the poor and needy, without pay, if, in addition to that, it engages in

the business of selling hospitalization to the public, it is liable for the negligence of its nurses as fully as the institution which sells hospitalization to the public for profit. (See *Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151; also *Sessions v. Thomas D. Dee Memorial Hospital Assn.*, 94 Utah, 460, 78 Pac. (2d) 645.)