483 P.2d 687

### The STATE of Idaho, Plaintiff-Respondent,

v.

### ADJUSTMENT DEPARTMENT CREDIT BUREAU, INC. aka Adjustment Department Credit Bureau of Boise, Inc., Defendant-Appellant.

No. 10333.

Supreme Court of Idaho.

April 7, 1971.

Richard Rosenberry, of Dunlap, Rettig & Rosenberry, Caldwell, for defendant-appellant.

Robert M. Robson, Atty. Gen., and Richard H. Greener, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

The defendant, Adjustment Department Credit Bureau, Inc., an Idaho corporation, conducts a bill collection service as a part of its operation. It was charged by an amended information of the crime of extortion alleged to have been committed by and through its agent, Howard Short, in August, 1967. Preliminary motions by the defendant and a demurrer were overruled, and the defendant pleaded "not guilty."

The case was tried to a jury which returned its verdict of guilty of the crime charged in the information and judgment of conviction was entered and a fine of $1,500.00 imposed against the corporation. The defendant appealed from this judgment.

One of the defendant's customers, a pharmacy, assigned an open account owed to the pharmacy by Rodney Price to the defendant for collection. Howard Short, an agent of the defendant, handled this particular claim for the defendant company. Price had executed a promissory note to the defendant on this claim, and when the note was not paid in accord with its terms, suit was instituted in a justice court in Ada County and default judgment en-

tered in July of 1967. Short attempted to collect on this judgment against Price, who was out of work at the time. Subsequently, Short accepted a check with the understanding it would be paid in installments. At the time of execution of this check Price told Short that there were no funds in the bank on which the check was written. After other subsequent conversations Short had Price execute another check on a different bank even though Price had told him that he had no account there, and the first check was torn up. This second check was presented for payment to the bank and returned unpaid.

Later in the summer of 1967 Price secured employment away from Boise and Short contacted Mrs. Price concerning the obligation. Price testified that on an occasion when he was in Boise, Short contacted him and advised him that Short would prosecute him for issuance of a bad check unless Price made a payment on the debt. Price then paid $20.00 to Short, which was evidenced by a receipt.

Later Price stated he believed he was going to be prosecuted for the bad check and went to see Mr. Slayton, who was the head of the collection division of the defendant corporation. Price testified "Mr. Slayton told me it was out of his hands, it was between me and Mr. Short." Mr. Slayton testified that he remembered Mr. Price came in to see him one time and was asking questions about the account. Slayton stated "I told him Mr. Short was handling the account."

■ On this appeal the defendant has made numerous assignments of error. The crucial issue presented by these assignments of error concerns the instruction given by the trial court to the effect that a corporation (which acts only through its agents) can be held criminally liable "for the acts of its agents who are authorized to act for it in the particular matter out of which the unlawful conduct with which it is charged grows or in the business to which it related." It is the defendant's contention that this instruction by the trial

court was in error, arguing that the trial court should have instructed that the defendant corporation could have been found guilty only if the agent committed the prohibited acts, and that the agent's acts were authorized, requested or commanded by another corporate agent having responsibility for formation of corporate policy, or by a managerial agent having supervisory responsibility over the subject matter.

It is our conclusion that there is merit in the defendant's position in regard to these instructions. A corporation, being an artificial being, a creature of statute, can only act through its agents and employees. At the early common law, the fact that a corporation had no tangible, physical existence, was regarded as making it impossible for a corporation to commit a crime. 1 Wharton's Criminal Law (Anderson 1957), § 52, p. 117. Under the modern view, however, a corporation may be found guilty of a breach of a duty imposed by law, both for acts of nonfeasance and misfeasance (New York Cent. & Hudson RR. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1908) ). A corporation is criminally responsible for statutory crimes, such as obtaining money under false pretenses (Joseph L. Sigretto & Sons, Inc. v. State, 127 N.J.L. 578, 24 A.2d 199 (1942) ), usury (State v. First Nat'l Bank of Clark, 2 S.D. 568, 51 N.W. 587 (1892) ), illegal sale of liquor (Zito v. United States, 64 F.2d 772 (7th Cir. 1933), and United States v. Wilson, 59 F.2d 97 (D.C.1932) ), unlawful sale of adulterated foods (Golden Guernsey Farms, Inc. v. State, 223 Ind. 606, 63 N.E.2d 699 (1945) ). 1 Wharton's Criminal Law (Anderson 1957), § 53, p. 123; 19 Am.Jur.2d Corporations, § 1437, p. 829.

By reason of the fact that corporations can only act through their agents, the courts have struggled with the problem of holding a corporation criminally liable in those cases involving crimes where a specific intent is required. 19 Am.Jur.2d, Corporations § 1435, p. 829. The question is, how can a corporation, an artificial being, have the necessary *mens rea* to com-

mit those crimes where specific intent is required. The answer is found in the relationship between the corporation and the agent that performed the acts for which the corporation is being criminally charged, and in the nature of the crime with which the corporation is being charged.

There are certain crimes defined by statute for which a corporation is guilty without regard to any unlawful intent. See New York Cent. & Hudson RR Co. v. United States, supra, which was a prosecution under the Elkins Act, which made it a misdemeanor for any carrier to knowingly pay or receive a rebate, and which specifically provided that the act of an agent within the scope of his employment "shall in every case be also deemed to be the act, omission or failure of such carrier, as well as of that person." There are numerous other cases involving specific statutes where the violation by an agent is considered as a violation by the corporation. See C.I.T. Corp. v. United States, 150 F.2d 85 (9th Cir. 1945); United States v. General Motors Corp., 226 F.2d 745 (3d Cir. 1955).

Some students of the problem of corporate criminal responsibility have drawn a distinction between those types of criminal cases where the crime is one created by statute, and where the crime is a codification of a common law offense. 50 Georgetown L.Rev. 547 (1962). The conclusion of the authors in this discussion is that when a statutory offense is involved, the commission of a crime by a corporate agent within the scope of his authority is a crime of the corporation, regardless of knowledge, acquiescence, or ratification by a higher corporate officer. However, when the crime is a statutory codification of a common law crime requiring *mens rea* this reasoning as to corporate criminal liability is insufficient to bind the corporation, and more must be established to justify a conviction under this type of crime than a mere proof of an agency relationship.

In the recent case of Boise Dodge, Inc. v. Clark, 92 Idaho 902, 453 P.2d 551 (1969), this court in a case involving the assessment of punitive damages against a corporation for its fraudulent activities, upheld an award of punitive damages against the corporation. Therein this court stated:

"We recognize that Idaho is one of those states which applies the rule that a principal is liable for punitive damages based upon the acts of his agents only in which the principal participated or which he authorized or ratified. Of course, a wooden application of this rule, which we reject, would effectively insulate all corporations from punitive damage liability, for a corporation can act only through its agents. On the other hand, it is wise policy from the standpoint of proper corporate responsibility to recognize that, when corporate officials and managing and policy-making agents engage in fraudulent activity in furtherance of corporate profits which inure to the benefit of shareholders, the acts of such agents must be attributed to the corporation." 92 Idaho at 905–906, 453 P.2d at 554.

The reasoning in Boise Dodge, Inc. v. Clark, supra, which involved an issue of punitive damages, is applicable in this case involving extortion. By statute, I.C. § 18–2801, extortion is defined

"Extortion is the obtaining of property from another, with his consent, induced by a wrongful force or fear or under color of official right."

I.C. § 18–2802 provides:

"Fear, such as will constitute extortion, may be induced by a threat, either:

1. To do an unlawful injury to the person or property of the individual threatened or to any relative of his, or member of his family; or

2. To accuse him, or any relative of his, or member of his family of any crime; or * * *."

These statutes are a codification of the common law crime of extortion or blackmail. 31 Am.Jur.2d Extortion, Blackmail, § 8, p. 905. A specific intent to extort

money or other thing of value is an essential element of this crime. 31 Am.Jur.2d Extortion, Blackmail, § 9, pp. 906–907.

The case of Boise Dodge, Inc. v. Clark, supra, involving a fraudulent misrepresentation, and imposition of punitive damages against the corporation, is analogous to the situation here. The corporation in this case could not be bound by the actions of its agent unless that agent's acts were authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

2 Corporation Law and Practice, Hornstein, 1959, § 566, p. 47, in our opinion correctly states the rule as to criminal liability as follows:

> "A corporation may be convicted if (a) legislative purpose plainly appears to impose absolute liability on the corporation for the offense; or (b) the offense consists of an omission to perform an act which the corporation is required by law to perform; or (c) the commission of the offense was authorized, requested, commanded or performed (i) by the board of directors, or (ii) by an agent having responsibility for formation of corporate policy or (iii) by a 'high managerial agent' having supervisory responsibility over the subject matter of the offense and acting within the scope of his employment in behalf of the corporation. * * *."

Thus the instructions given by the trial court to the effect that the corporation could be found guilty if the jury found that the agent was acting within the scope of his authority was not a correct statement of the law under the circumstances of this case; it was not established that Short was in a managerial capacity, and no issue was submitted to the jury as to whether Short's actions were authorized, requested, or commanded by either an agent of the corporation responsible for formation of corporate policy or by a high managerial agent. This error is of a prejudicial nature and the case must be remanded.

Since this case is being reversed and remanded, there remain further assignments of error that are worthy of discussion for guidance of the trial court. I.C. § 1–205.

■ First, the defendant contends the trial court erred in refusing to strike the word "feloniously" as used in the amended information. There is no merit to this contention, as the crime with which the defendant was charged was in fact a felony. I.C. § 18–2803. Defendant cited State v. Martin, 73 Idaho 545, 255 P.2d 713 (1953), where this court held that the use of that term was not necessary in an information. However, this court therein did not hold its use to be erroneous. The adverb "feloniously" is descriptive of the crime and its use in a felony case is not error.

■ Secondly, the defendant contends that a corporation is not a person as employed in the criminal statutes and thus cannot be found guilty of a crime unless specifically provided therein. I.C. § 73–114 defines certain terms as used in the statutes, including the term "person." Therein it is stated " * * * the word 'person' includes a corporation as well as a natural person." See also 19 Am.Jur.2d Corporations, § 1436, p. 829. It is our conclusion that the provisions of I.C. § 73–114 are controlling and a corporation is a "person" as that term is used in the criminal statutes.

■ Finally, the defendant asserts that there was a lawful debt due and owing it by Price, the debtor, and that this is a defense to the crime charged here. With this contention we do not agree. The correct rule insofar as criminal actions for extortion are concerned, in our opinion, is stated:

> "Although there are some decisions to the contrary, most of the courts have held that it is a criminal offense for a

creditor to obtain money or property from a debtor by means of a threat to accuse the latter of a crime, although the creditor believes that the money or property is actually due him, and although he believes the debtor guilty of the crime which he is threatening to expose. It has been held that the fact that the person threatened is guilty of the crime of which he is threatened with exposure is unimportant so far as the guilt of the person making the threat is concerned. * * *." 31 Am.Jur.2d Extortion, Blackmail, Etc., § 11, p. 909.

See also: People v. Beggs, 178 Cal. 79, 172 P. 152 (1918). Annot. 135 A.L.R. 728.

The judgment of the trial court is reversed, and the cause remanded for further proceedings.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.