172 P.3d 1123 (2007)
Adam Paul STEED, an individual, and Benjamin Paul Steed, an individual, Plaintiffs-Respondents,
v.
GRAND TETON COUNCIL OF THE BOY SCOUTS OF AMERICA, INC., a corporation, Defendant-Appellant. and
Boy Scouts of America, a corporation; Bradley Grant Stowell, an individual; Judith Stowel, an individual; Carl Bradford Allen, an individual; Jim Summers, an individual; C. Hart Bullock, an individual; Elias Lopez, an individual; Kim A. Hansen, an individual; Robert Fawcett, an individual; and John Doe individuals I through V; and John Doe Corporations I through V, Defendants.
No. 33272.
Supreme Court of Idaho, Pocatello, October 2007 Term.
November 30, 2007.
*1124 Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. Gary T. Dance argued.
*1125 Racine, Olson, Nye, Budge & Bailey Chartered, Pocatello, for respondents. Mitchell W. Brown argued.
EISMANN, Chief Justice.
This is an appeal from an order denying in part the appellant's motion for summary judgment. Because the trial court's decision involved legal issues of first impression regarding the liability of a corporation for the tort of injury to a child under Idaho Code § 6-1701(4), we granted an interlocutory appeal to address those issues of law. We do so, vacate the order denying the motion for summary judgment and remand for further proceedings.

I. FACTS AND PROCEDURAL HISTORY
The Plaintiffs, Adam and Benjamin Steed, filed this action on February 24, 2005. They alleged that in 1997 they were sexually molested by Bradley Stowell while at a boy scout camp operated by Grand Teton Council of the Boy Scouts of America (Grand Teton Council). They brought the action against Boy Scouts of America, Grand Teton Council, Stowell, and others. The Steeds sought to recover for assault and battery, false imprisonment, negligence per se, and negligence. This appeal involves only the claims against Grand Teton Council.
Grand Teton Council moved to dismiss the complaint as to it on the ground that the claims were barred by the statute of limitations in Idaho Code § 5-219. The district court held that all of the Steeds' claims were barred by the statute of limitations except for claims that could be brought under Idaho Code § 6-1701. That statute creates four tort causes of action in child abuse cases. They are: (1) lewd conduct as defined in Idaho Code § 18-1508; (2) sexual abuse of a child as defined in Idaho Code § 18-1506; (3) sexual exploitation of a child as defined in Idaho Code § 18-1507; and (4) injury to a child as defined in Idaho Code § 18-1501. An action under any of those four causes of action may be maintained within five years after the child reaches the age of eighteen years. I.C. § 6-1704. The complaint in this case was filed within five years of when the Steeds each turned eighteen.
The district court held that the Steeds' cause of action under Idaho Code § 6-1701(4) was not barred by the statute of limitations. Grand Teton Council asked this Court to grant an interlocutory appeal in order to address three issues: (1) Does this Court's opinion in Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998), bar recovery against Grand Teton Council?; (2) Can a corporation be liable in damages for the tort of injury to a child as defined in Idaho Code § 6-1701(4)?; and (3) Can a non-profit corporation be liable for damages? This Court granted an appeal from that interlocutory order to address issues of law relevant to the district court's decision.

II. ISSUES ON APPEAL
1. Does this Court's opinion in Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998), bar recovery against Grand Teton Council?
2. Can a corporation be liable for the tort of injury to a child as it is defined in Idaho Code § 18-1501?
3. Can a nonprofit corporation be held liable for damages?
4. Would the payment of compensation to the Steeds while they were at the Boy Scout camp prevent them from being in the care or custody of the Grand Teton Council?
5. Did the district court err in denying Grand Teton Council's motion for summary judgment?

III. ANALYSIS
A. Does this Court's Opinion in Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998), Bar Recovery Against Grand Teton Council?
In Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998), the plaintiff, Osborn, was a former high-school student who attended Centennial High School in Meridian School District No. 2. during the years 1989 through 1991. On December 13, 1995, Osborn filed a lawsuit contending that while she was attending *1126 the high school one of her teachers named Salinas sexually abused her. She sought to recover damages against the teacher, the high school, the school district, and the local board of education. She asserted claims under state law and under federal law (42 U.S.C. § 1983).
The school district moved for summary judgment on the grounds that her alleged state law claims were barred by the failure to give timely notice of tort claim as required by Idaho Code § 6-906A and that her claim under 42 U.S.C. § 1983 was barred by the statute of limitations. The district judge granted the school district's motion for summary judgment, and the former student appealed.
At the time of the alleged sexual assaults, Idaho Code § 6-906A required Osborn to present and file a notice of tort claim against the school district within 120 days after she reached age eighteen.[1] She turned eighteen on February 9, 1991, but did not file a timely notice of tort claim. She argued on appeal that where Idaho Code § 6-1704 provided that the statute of limitations for certain torts committed against children did not expire until five years after the child reached age eighteen, this Court should use that statute by analogy to extend the time period for giving notice of tort claim under Idaho Code § 6-906A. This Court rejected that argument and concluded the discussion with the following statement:
Furthermore, I.C. § 6-1704 sets a time limit within which to file an action, not to file notice of a tort claim. Even if it were intended to toll the time in which minors must give notice of their claims, the statute applies to the perpetrators of sexual abuse and does not govern claims against third parties.
Grand Teton Council seizes upon the last sentence in the above-quoted statement from the Osborn v. Salinas opinion and asserts that it cannot be held liable as a third party who did not commit the alleged sexual abuse. The district court held that the statement was dicta and disregarded it. Both of them failed to correctly analyze the statement in the context in which it was made.
Idaho Code § 6-1701 creates four tort causes of action in child abuse cases, defining them by incorporating criminal statutes by reference. It provides:
An action may be brought by or on behalf of any child against any person who has:
(1) Wilfully and lewdly committed any lewd or lascivious act or acts upon or with the body or any part or member of a child under the age of sixteen (16) years as defined in section 18-1508, Idaho Code; or
(2) Sexually abused any child as defined in section 18-1506, Idaho Code; or
(3) Sexually exploited any child for a commercial purpose as defined in section 18-1507, Idaho Code; or
(4) Injured a child as defined in section 18-1501, Idaho Code.
This civil cause of action exists independently of any criminal action commenced pursuant to chapter 15, title 18, Idaho Code. A civil action may be pursued under the provisions of this chapter even if a criminal prosecution is not pursued.
As stated in Osborn v. Salinas, the statute does not create vicarious liability for the conduct of another. It grants a civil cause of action "against any person who has" committed the defined acts. The issue in the present case is whether Grand Teton Council is liable for the tort of injury to a child under Subsection (4) of Idaho Code § 6-1701. That cause of action was not alleged in Osborn v. Salinas.
Osborn's complaint was divided into two counts. Count I was entitled "Negligent and/or Intentional Torts." With respect to Salinas, it alleged, "Defendant Oscar Salinas was guilty of negligent and/or willful assault, battery, and sexual assault on Michelle Osborn, and negligent and intentional infliction of emotional distress." The only allegation in Count I that implicated the school district was the allegation that as Salinas's employer it was vicariously liable for his conduct. The complaint alleged, "At all times mentioned, *1127 Defendant Oscar Salinas was a teacher employed by Defendant School District as a teacher and coach, and during the events which are complained of, he was acting both within and outside the course of his employment as a teacher."
Count II of the complaint was entitled, "Violation of Civil Rights." It stated a negligence claim against the high school, but did not expressly mention the school district. It alleged, "Defendant Centennial High School negligently failed to investigate Oscar Salinas' behavior and to take steps to remedy the behavior or to terminate Mr. Salinas' employment within the school, or to protect Michelle Osborn." The only claim alleged in Count II regarding the school district was an allegation that it was vicariously liable for the negligence of the high school. In Count II, Osborn re-alleged the allegations in Count I, including that "[a]t all times mentioned Centennial High School was and is now a public high school within and operated by Meridian School District No. 2." Thus, the only allegations against the school district in Osborn v. Salinas were based upon imputing liability to it for the conduct of its employee Salinas and its high school. There was no allegation of any liability against the school district under Idaho Code § 6-1701.
At best, the complaint in Osborn v. Salinas alleged a cause of action against Salinas under subsections (1) and (2) of Idaho Code § 6-1701. As to those causes of action, "the statute applies to the perpetrators of sexual abuse and does not govern claims against third parties."
In this case, the Steeds allege that Grand Teton Council committed the tort of injury to a child under Idaho Code § 6-1701(4), which defines the tort by incorporating the language of Idaho Code § 18-1501 by reference. The portion of Section 18-1501 that is applicable to this case is Subsection (2) which provides:
Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health may be endangered.
There is nothing in Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998), that bars the Steeds from recovering against Grand Teton Council on the theory that it committed the tort of injury to a child as defined in Idaho Code § 6-1701(4). If the Council committed that tort against either boy, it would be liable in damages for its own conduct, not for that of a third party. It would have to have willfully caused or permitted him to suffer; or willfully inflicted upon him unjustifiable physical pain or mental suffering; or willfully caused or permitted his person or health to be injured while having care or custody of him; or willfully caused or permitted him to be placed in such situation that his person or health may have been endangered while having the care or custody of him. State v. Tiffany, 139 Idaho 909, 88 P.3d 728 (2004) (defining the ways in which the comparable language in subsection (1) of Section 18-1501 could be violated). A defendant can be liable for damages under Idaho Code § 6-1701(4) even if the defendant did not actually harm the child. Such liability is not based upon the wrongdoing of another being imputed to the defendant. It is based upon the defendant's conduct in willfully permitting the person or health of the child to be injured or willfully permitting the child to be placed in such situation that his person or health may be endangered.
When discussing the opinion in Osborn v. Salinas, the district court also referred to the Steeds as having "negligence per se claims based upon I.C. §§ 6-1701, et seq.," and it concluded that those claims were timely under Idaho Code § 6-1704. In so holding, the district court erred. Only actions brought under the provisions of Chapter 17, Title 6, Idaho Code, receive the benefit of the extended statute of limitations provided by Idaho Code § 6-1704.[2] The *1128 only causes of action created under Chapter 17, Title 6, Idaho Code, are those created by Idaho Code § 6-1701. None of them is a negligence per se claim.
Negligence per se is simply one manner of proving a common law negligence claim. Ahles v. Tabor, 136 Idaho 393, 34 P.3d 1076 (2001). "The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." Alegria v. Payonk, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). "[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." Sanchez v. Galey, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). "Negligence per se lessens the plaintiff's burden only on the issue of the `actor's departure from the standard of conduct required of a reasonable man.'" Ahles v. Tabor, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001) (quoting Restatement (Second) of Torts § 288B cmt. B (1965)). In such cases, the court adopts as the standard of conduct of a reasonable person the requirements of the statute or regulation. Brizendine v. Nampa Meridian Irrig. Dist., 97 Idaho 580, 548 P.2d 80 (1976).
Four criteria must be met before a statute or regulation can be used as a basis for a claim based upon negligence per se. Sanchez v. Galey, 112 Idaho 609, 733 P.2d 1234 (1986). One of them is "the statute or regulation must have been intended to prevent the type of harm defendant's act or omission caused." Id. at 617, 733 P.2d at 1242. Idaho Code § 6-1701 is not a public safety statute intended to prevent specific types of harm. It does not set forth a standard of care established by the legislature that supplants the reasonable person standard encompassed in the concept of ordinary negligence. It is not necessary for a court to adopt it as a standard of care required of a reasonable person. The statute itself creates the causes of action and specifies the standards of care that must be violated in order to recover damages.
We have held that a statute that recognizes the right to recover damages for negligence cannot be the basis of a negligence per se claim. In Stott ex rel. Dougall v. Finney, 130 Idaho 894, 896, 950 P.2d 709, 711 (1997), the plaintiff brought an action to recover damages for injury to her real property allegedly caused by the failure of an earthen dam constructed by the defendants on their property. On an appeal from a jury verdict on behalf of the defendants, the plaintiff contended that the trial court erred by failing to give a negligence per se instruction based upon Idaho Code § 42-1204. That statute provides that the "owners or constructors of ditches, canals, works or other aqueducts . . . must carefully keep and maintain the same . . . in good repair and condition, so as not to damage or in any way injure the property or premises of others." In upholding the district court, we held, "I.C. § 42-1204 does not create a negligence per se action, but only codifies that ditch owners and constructors can be held liable for damages occurring to others as a result of negligence." 130 Idaho at 896, 950 P.2d at 711. Similarly, a statute that creates a civil cause of action cannot be the basis of a negligence per se claim. The statute creating the cause of action defines the conduct constituting the tort and the applicable standard of care.
In addition, none of the causes of action created by Idaho Code § 6-1701 permit recovery based simply upon negligence. Converting the statute into a negligence per se claim would alter the causes of action created by the legislature. With respect to the claim based upon Idaho Code § 6-1701(4) in this case, each of the Steeds must prove that while he was in the care or custody of Grand Teton Council, it willfully caused or permitted his person or health to be injured or willfully placed him in a such a situation that his person or health was endangered. "Willfully" in this context requires actual *1129 knowledge.[3]State v. Young, 138 Idaho 370, 64 P.3d 296 (2002). To have willfully caused Adam's or Benjamin's person or health to be injured, Grand Teton Council would have to have acted knowing that its conduct would cause such injury. To have willfully permitted the injury, Grand Teton Council would have to have known it would or was occurring and failed to act. To have willfully placed Adam or Benjamin in a situation where his person or health was endangered, Grand Teton Council would have to have known of the danger. Actual knowledge is not a negligence standard of care; negligence is based upon what the person knew or should have known. State v. Blake, 133 Idaho 237, 985 P.2d 117 (1999). Thus, converting the torts created by Idaho Code § 6-1701 into a negligence per se cause of action would alter the causes of action as defined by the legislature.
B. Can a Corporation Be Liable for the Tort of Injury to a Child as It Is Defined in Idaho Code § 18-1501?
As mentioned above, Idaho Code § 6-1701 grants a civil cause of action "against any person who has" committed the defined acts. Grand Teton Council is a corporation, and for it to be liable it would have to be the corporation who committed the tort, not simply one of its agents. As stated in Osborn v. Salinas, the statute does not create vicarious liability for the conduct of another. The issue is defining the circumstances under which Grand Teton Council can be held to have committed the tort at issue that requires a specific mental element.
In State v. Adjustment Department Credit Bureau, 94 Idaho 156, 483 P.2d 687 (1971), a corporation appealed its conviction of the crime of extortion, which required a specific mental intent. The jury had been instructed that the corporation could be found guilty if its agent who engaged in the conduct at issue was acting within the scope of his authority. We noted that "the courts have struggled with the problem of holding a corporation criminally liable in those cases involving crimes where a specific intent is required. The question is, how can a corporation, an artificial being, have the necessary mens rea to commit those crimes where specific intent is required." 94 Idaho at 158-59, 483 P.2d at 689-90. We resolved the issue based upon the relationship between the agent who performed the acts and the corporation. We held that a corporation could be criminally liable if:
(a) legislative purpose plainly appears to impose absolute liability on the corporation for the offense; or (b) the offense consists of an omission to perform an act which the corporation is required by law to perform; or (c) the commission of the offense was authorized, requested, commanded or performed (i) by the board of directors, or (ii) by an agent having responsibility for formation of corporate policy or (iii) by a `high managerial agent' having supervisory responsibility over the subject matter of the offense and acting within the scope of his employment in behalf of the corporation.
94 Idaho at 160, 483 P.2d at 691 (quoting from 2 Corporation Law and Practice, Hornstein, 1959, § 566, p. 47). The district court reasoned that a corporation could be criminally liable under Idaho Code § 18-1501 and concluded that there was sufficient evidence *1130 in the record to create a genuine issue of material fact as to whether Grand Teton Council violated that statute by "an omission to perform an act which the corporation is required by law to perform." In so ruling, the district court erred.
Because this lawsuit is not a criminal action brought by the State against Grand Teton Council, State v. Adjustment Department Credit Bureau, does not directly apply. That case addressed the circumstances in which a corporation could be held criminally liable. Although the case before us does not involve criminal liability of a corporation, the issue is similar. How can Grand Teton Council, a corporation, have the state of mind necessary to commit the intentional tort defined by Idaho Code § 6-1701(4)? The issue here is sufficiently analogous to apply the reasoning of State v. Adjustment Department Credit Bureau to this case.
In the Adjustment Department Credit Bureau case, we identified three circumstances in which a corporation could be held criminally liable. The first two were: "(a) legislative purpose plainly appears to impose absolute liability on the corporation for the offense; [and] (b) the offense consists of an omission to perform an act which the corporation is required by law to perform." Neither of them has any application in this case. As to the first, if the legislature created a strict liability tort applicable to a corporation, we would not need to reason by analogy from the Adjustment Department Credit Bureau case in order to hold the corporation liable. The statute itself would impose such liability. As to the second, because this case does not involve "an omission to perform an act which the corporation [was] required by law to perform," we need not address the circumstances in which a corporation can be held liable in tort for the failure to perform a statutorily mandated act. The issue in this case falls under the third set of circumstances identified in the Adjustment Department Credit Bureau case.
The torts created by Idaho Code § 6-1701(4) are intentional torts. The issue is determining the circumstances in which the corporation can be held to have the requisite state of mind to commit the tort. The third circumstance identified in the Adjustment Department Credit Bureau case addresses that issue. The tort at issue in this case will have been committed by a corporation if it was committed "(i) by the board of directors, or (ii) by an agent having responsibility for formation of corporate policy or (iii) by a `high managerial agent' having supervisory responsibility over the subject matter of the [tort] and acting within the scope of his employment in behalf of the corporation." For the corporation to be liable, the board of directors would have to have committed the acts constituting the tort while they had the requisite mental intent or knowledge, or an agent described in subsections (ii) or (iii) would have to have committed the tort while having the requisite mental intent or knowledge. In making that determination, knowledge of other agents or employees of the corporation would not be imputed to the board of directors or to the agent having responsibility for formation of corporate policy or to the "high managerial agent."
C. Can a Nonprofit Corporation Be Held Liable for Damages?
Grand Teton Council contends that for public policy reasons a nonprofit corporation, such as it, should not be held liable for either compensatory or punitive damages. Quoting from Ettlinger v. Trustees of Randolph-Macon College, 31 F.2d 869, 873 (4th Cir.1929), it argues that public policy "forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public" and "[t]he law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists."
In Wilcox v. Idaho Falls Latter Day Saints Hospital, 59 Idaho 350, 362, 82 P.2d 849, 854 (1938), this Court addressed whether a charitable hospital could be liable to a paying patient injured by the negligence of the hospital's employees. The Court noted that three reasons had been given by other courts for exempting charitable hospitals from liability. They were: (1) immunity *1131 grounded on public policy;[4] (2) immunity based upon the trust fund doctrine;[5] and (3) implied waiver of liability by acceptance of benefits.[6] The Wilcox Court rejected the arguments that public policy or the trust fund doctrine supported a grant of immunity. It adopted the implied waiver rationale and held "that a hospital, conducted in the interest of charity, is exempt from liability to its paying patients who have suffered injury due to the negligence of its employees." 59 Idaho at 362, 82 P.2d at 854. Eighteen years later, in Wheat v. Idaho Falls Latter Day Saints Hospital, 78 Idaho 60, 297 P.2d 1041 (1956), this Court overruled Wilcox. It held "that the hospital, though a charitable institution, is liable for injuries to its paying patients, resulting from negligence of its management or employees. To the extent it is in conflict herewith, the Wilcox case is overruled." 78 Idaho at 62, 297 P.2d at 1042.
This Court has previously rejected the arguments that it should immunize charitable organizations from liability in tort for public policy reasons. Although the Wheat opinion left open the possibility that a nonpaying recipient of the charitable organization's services could be held to have impliedly waived the right to recover damages resulting from the negligence of the organization's employees, we also reject that rationale. Subject to certain exceptions, parties to a transaction may agree by contract to limit liability or waive rights and remedies. Lee v. Sun Valley Co., 107 Idaho 976, 695 P.2d 361 (1984). It would be improper for the Court to step in and imply a waiver that the parties did not agree to.
D. Would the Payment of Compensation to the Steeds while They Were at the Boy Scout Camp Prevent them from Being in the Care or Custody of Grand Teton Council?
Although not listed in the motion for a permissive appeal, Grand Teton Council also raises the issue of whether payment of compensation to the Steeds while they were at the Boy Scout camp precludes a finding that the Steeds were in the care or custody of Grand Teton Council. Because this issue will arise on remand, we will address it also.
While the Steeds were at the Boy Scout camp during the summer of 1997, they were junior staff members of the camp staff, for which they received food, lodging, and a small stipend. Grand Teton Council argues that the compensation rendered the boys employees, *1132 and as employees they could not have been in its care or custody.
An employee is not, by virtue of that relationship alone, in the care or custody of his or her employer. Hei v. Holzer, 139 Idaho 81, 73 P.3d 94 (2003). However, there is no basis for holding that a minor can never be in the care or custody of his or her employer. There is nothing in Idaho Code § 6-1701 or in the ordinary meaning of "care or custody" that would preclude finding that the Steeds were in the care or custody of Grand Teton Council simply because they received some compensation for their services.
E. Did the District Court Err in Denying Grand Teton Council's Motion for Summary Judgment?
Grand Teton Council also assigns as an issue on appeal that the district court erred in denying its motion for summary judgment. The purpose of an interlocutory appeal is to resolve "a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation." I.A.R. 12(a). We have addressed the controlling questions of law that have been raised by this appeal. Whether, in light of this opinion, Grand Teton Council is entitled to summary judgment is not a controlling question of law and is a matter that should first be addressed by the district court. Therefore, we will not address it here.

IV. CONCLUSION
The order denying Grand Teton Council's motion for summary judgment is vacated and this case is remanded for further consideration of that motion consistent with this opinion. Since both parties prevailed in part, we do not award costs on appeal.
Justices J. JONES, HORTON and Justice Pro Tem TROUT concur.
BURDICK, J., specially concurring.
Concurring in the opinion of the Court and write only to further discuss State v. Adjustment Department, Credit Bureau, Inc., 94 Idaho 156, 483 P.2d 687 (1971). That case dealt with the issue of whether or not a corporation could be found guilty of a specific intent crime, extortion. The opinion in that case is somewhat ambiguous. It quotes in pertinent part:
The corporation in this case could not be bound by the actions of its agent unless that agent's acts were authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.
Subsequently, in the next line, it says as follows:
(2) Corporation law and practice, Horstine, 1959 S 566, pg. 47, in our opinion correctly states the rule as to criminal liability:
A corporation may be convicted if . . . (c) the commission of the offense was authorized, requested, commanded or performed (i) by the board of directors (ii) by an agent having responsibility for formation of corporate policy or (iii) by a `high managerial agent' having supervisory responsibility over the subject matter of the offense and acting within the scope of his employment on behalf of the corporation. . . . However in this case we are dealing with an analysis of whether a corporation could have been found to have committed the specific intent crime as defined in I.C. § 18-1501. I.C. § 18-1501(1) deals with the felony provision in which circumstances or conditions likely to produce great bodily harm or death are discussed and (2) defines those circumstances and conditions other than those likely to produce great bodily harm or death and are therefore defined as a misdemeanor.
However, in this case we are dealing with an analysis of whether the corporation could be liable for committing the specific intent crimes found in I.C. § 18-1501. In Idaho Code § 18-1501, the first subsection deals with felony conduct and the second with misdemeanor conduct. The consistent theme in both of these provisions however is that any *1133 person who "willfully causes or permits any child to suffer. . . . unjustifiable physical pain or mental suffering or who having the care and custody of any child willfully causes or permits the person of such child to be injured or willfully causes or permits such child to be placed in such a situation that its personal health may be in danger." The statute thereby defines a cause of action when a person "permits" a child to suffer unjustifiable physical pain or mental suffering, or the health of such child to be injured, or endangered, and the type of injury, then defines the punishment.
I would note that "permit" as defined in the Tenth Edition of Merriam Webster's Collegiate Dictionary is: "1: to consent to expressly or formally 2: To give leave 3: to make possible: to give an opportunity: allow." The definition of "allow" in the same dictionary has as one of its definitions "to forebear or neglect to restrain or prevent." As a result, liability under this statutory construct can be attributed to action as well as a lack of action consistent with the majority's discussion.
Justice J. JONES concurs.
NOTES
[1] Ch. 77, § 1, 1985 Idaho Sess. Laws 151. The time period was increased to 180 days effective July 1, 1994. Ch. 349, § 1, 1994 Idaho Sess. Laws 1109-10.
[2] That statute provides, "Notwithstanding any limitation contained in chapter 2, title 5, Idaho Code, an action under the provisions of this chapter must be commenced within five (5) years from the date that an aggrieved child reaches the age of eighteen (18) years."
[3] In 2005, the legislature amended Idaho Code § 18-1501 to create a negligence standard of care for the conduct in that statute that must be done "willfully." It defined "willfully" in the statute to mean "acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child." Ch. 151, § 1, 2005 Idaho Sess. Laws 467. Defining "willfully" to mean what "a reasonable person would know" is a negligence standard of care. Ahles v. Tabor, 136 Idaho 393, 34 P.3d 1076 (2001) (a reasonable person standard encompasses the concept of ordinary negligence); Nelson v. Northern Leasing Co., 104 Idaho 185, 657 P.2d 482 (1983) (finding of negligence upheld based upon the risk to a child that a reasonable person would have foreseen); 57A Am.Jur.2d, Negligence, § 133 (2004) ("The phrasing of the standard of care in negligence cases in terms of the `reasonable person' is firmly implanted in the American law of negligence"). The district court initially ruled that the 2005 amendment would be applied retroactively to this case, but later on a motion for reconsideration correctly held that doing so would constitute an improper retroactive application of the amendment in violation of I.C. § 73-101.
[4] The Wilcox Court stated at 59 Idaho at 360, 82 P.2d at 853 (quoting from 13 Ruling Case Law at 945):

The theory on which those cases holding hospitals immune from liability to patients on the ground of public policy proceed, is that as such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, sick and needy, the common welfare requires that they should be encouraged in every way and held exempt from liability for tort; that to do otherwise would operate to discourage the charitably inclined, dissipate the assets of such institutions in damage suits, and ultimately, perhaps, destroy them.
[5] The Wilcox Court stated at 59 Idaho at 360-61, 82 P.2d at 853 (quoting from 13 Ruling Case Law at 945):

The trust fund doctrine in brief is that a trust fund cannot be made liable for breaches of trust by the trustees. The rationale of the doctrine as applied to hospitals, as a basis of immunity from suit is that if the charity or trust fund could be used to compensate injured parties for the negligence of the agents or servants of the hospital, the fund would be diverted to purposes never intended by the donor, and the charitable purposes of the creators or founders frustrated.
[6] The Wilcox Court stated at 59 Idaho at 361, 82 P.2d at 853-53 (quoting from 13 Ruling Case Law at 945):

The doctrine is that one who accepts the benefit either of a public or private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. In such cases there is an assumption of risk by the patient who seeks and receives the services of a public charity. This principle, which may be said to be the modern prevailing rule with regard to a hospital's liability to its patients has the support of numerous cases. It can be applied, however, only where it can fairly be said that the person injured is the recipient of the institution's benefits, and would not apply to strangers or others dealing with it in some other relation. It applies, it has been said, to a paying as well as to a nonpaying patient in a hospital operating as a charitable institution.