IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42417-2014

| PERRY KRINITT, | ) | |
|---|---|---|
| | ) | **Moscow, August 2015 Term** |
| Plaintiff-Appellant, | ) | |
| | ) | **2015 Opinion No. 89** |
| v. | ) | |
| | ) | **Filed: September 25, 2015** |
| IDAHO DEPARTMENT OF FISH AND | ) | |
| GAME and STATE OF IDAHO, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Lewis County. Hon. Michael J. Griffin, District Judge.

The judgment of the district court is vacated and the order granting the motion for summary judgment is reversed.

Charles H. Carpenter, Carpenter Law Firm, PLC, Missoula, Montana, argued for appellant.

Peter J. Johnson, Johnson Law Group, P.S., Spokane, Washington, argued for respondent.

_____

EISMANN, Justice.

This is an appeal from a judgment dismissing the Plaintiff's action for wrongful death after the district court granted the Defendants' motion for summary judgment. Because there are genuine issues of material fact regarding the liability of the Defendants, we vacate the judgment and reverse the order granting the motion for summary judgment.

## I.
### Factual Background.

This lawsuit arose out of a fatal helicopter crash that occurred on August 31, 2010, in Kamiah, Idaho. The Idaho Department of Fish and Game (Department) had contracted with Leading Edge Aviation, LLC, to fly two Department employees from Clarkston, Washington, to

the Selway River in Idaho in order to collect data on salmon spawning. The pilot of the helicopter was Perry J. Krinitt, Jr., the son of the Plaintiff. The two Department employees were Larry Barrett and Danielle Schiff.

The helicopter had a "bubble canopy" with seating for three abreast and two bubble doors, one on each side. The bubble doors had windows that bulged outward so that passengers could look down. The bubble doors also increased the amount of room for the passengers. The pedestal with the flight instruments was located in front of the center seat.

For the flight, the pilot was going to sit in the center seat, Mr. Barrett was going to sit in the left seat, and Ms. Schiff was going to sit in the right seat. During the survey of the river, Mr. Barrett would be looking for the salmon spawning beds and Ms. Schiff would be recording his observations with paper and pencil. She had a metal clipboard that was about nine inches by twelve inches by three-fourths of an inch thick. The top was hinged so that paper or other items could be stored in the clipboard. Prior to the flight, the pilot briefed Mr. Barrett and Ms. Schiff, and during the briefing he told them that they must at all times maintain control of any items they had with them in the helicopter and that Ms. Schiff was responsible for the clipboard.

The pilot intended to fly to Selway Falls, Idaho, and refuel before flying along the Selway River. At about forty minutes into the flight, the pilot radioed that they were landing in Kamiah, Idaho, which was an unscheduled stop about 35 miles from Selway Falls. The pilot did not state why they were landing there. A man who was installing a sprinkler system at a retirement home in Kamiah looked up when he heard the helicopter and soon saw it appear over a ridge flying toward him. Its flight path was slightly to his left, so he could not see the right side of the helicopter. He noticed that as it came over the ridge, it began to descend like it was going to land. He watched for a while, and then resumed digging.

Upon hearing a loud bang, he looked up at the helicopter and saw something coming off the tail rotor. The helicopter began rotating back and forth on its axis. It rotated counterclockwise far enough for him to see the right side, and he saw that the right door was open about as far as it would go with someone in the doorway holding it open. It appeared to him as if the person was contemplating jumping. The helicopter then rotated clockwise so that he could not see the right side, and when it rotated counterclockwise again the right door was closed. He estimated that the helicopter was 300 to 400 feet in the air when he heard the loud bang. It continued descending, while rotating back and forth, until it was about 150 to 200 feet

2

in the air. At that point it fell straight down and crashed. The pilot and Ms. Schiff were killed in the crash, and Mr. Barrett died shortly after the crash from his injuries. An investigation revealed that Ms. Schiff's clipboard had struck the tail rotor, causing the tail rotor assembly to separate from the helicopter.

The Plaintiff filed this wrongful death action contending that the accident was caused by the negligence of the Department or its employees. The Defendants moved for summary judgment, and, after briefing and argument, the district court granted the motion. The Plaintiff then appealed.

## II.
### Did the District Court Err in Granting Summary Judgment?

A trial court may grant a motion for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In an appeal from a summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* at 47, 44 P.3d at 1102.

In its decision granting summary judgment, the district court found that the Plaintiff's evidence was lacking because it did not show who had possession of the clipboard when it left the cabin. The court also stated that the evidence showed that the clipboard hitting the tail rotor was an unforeseeable accident. The court erred in these determinations.

With respect to who had possession of the clipboard when it left the cabin, the court stated as follows:

> No one knows how or exactly when the clipboard left the helicopter and subsequently hit the tail rotor of the aircraft. There is no evidence indicating how or exactly when the clip board [sic] left the cockpit of the helicopter, or who had control over the clipboard just prior to the door being opened.
> The plaintiff has not offered any facts to show that Ms. Schiff or Mr. Barnett [sic] had exclusive control over the clipboard.
> . . . .

> There is no evidence, only suspicion, that the clip board [sic] was in Ms. Schiff's possession when the door was opened.

The undisputed facts are that Ms. Schiff had possession of the clipboard before the helicopter took off and that she was going to use it while writing down the observations of Mr. Barrett. Before she climbed into the helicopter, she set the clipboard on her seat. Prior to getting into the helicopter, the pilot instructed her to maintain control at all times of her items of property and that she was responsible for the clipboard. There is no evidence that anyone else was going to use the clipboard. As stated above, in ruling on the motion for summary judgment, the court was required to draw all reasonable inferences in favor of the Plaintiff. The most reasonable inference from the facts is that Ms. Schiff would have retained control of the clipboard during the flight.

With respect to when the clipboard left the cabin, the witness on the ground saw the helicopter making a normal landing approach. He resumed his work, and then heard a loud bang. When he looked up again, he saw something coming off the tail rotor, and the helicopter began rotating back and forth on its axis. The wreckage documentation issued by the National Transportation Safety Board stated that the debris field was about 1,500 feet in length; that the two tail rotor blades were fractured about twelve inches from the tail rotor hub; that crush damage to one of the blades showed that the damage occurred before the blade fractured; and that the 18-inch-long sections of the tail rotor blades that broke off were some of the earliest components in the debris field. The main parts of the metal clipboard were recovered in a similar location in the debris field, and the three main parts of the clipboard exhibited creasing, tearing, and red paint transfer marks, all of which were consistent with the clipboard being struck by the tail rotor blades. The reasonable inference is that the clipboard left the helicopter just prior to it hitting the tail rotor blades, which caused the loud noise that the man on the ground heard.

With respect to how the clipboard left the helicopter, it could only do so if the door was opened. During oral argument on the motion for summary judgment, the Defendants' counsel stated that it was undisputed that "the clipboard exited the helicopter on the right-hand side." Jim Pope, Jr., the owner of Leading Edge Aviation, stated that during June or July 2010, the right door of the helicopter had come open while he was flying it. He said that upon landing, he had his mechanic make adjustments to the door, that the helicopter was flown about 80 hours

4

afterwards, and that there were no further inadvertent door openings. During his deposition, Mr. Pope was asked how far the door would open when it opened inadvertently, and he answered, "Inch and a half to two inches." When asked about closing the door when it inadvertently opened, he responded, "It is as easy to close as a lid on a laptop."

Mr. Pope also explained that with the door handle in the closed position, the shoulder of the person sitting next to the door would effectively block the handle from inadvertently moving forward and allowing the door to open. He was alone in the helicopter when the door had come open in June or July and was sitting in the left seat (there were apparently duplicate flight controls—tail rotor pedals, collective lever, and cyclic stick—for the left seat). One of the experts testified that "there appears to be no explanation for the door opening in flight other than by the action of the passenger sitting in the seat closest to the door." Thus, there was evidence in the record that the clipboard could not have left the helicopter unless Ms. Schiff opened the door and failed to maintain control of the clipboard.

The district court also stated that the clipboard hitting the tail rotor if it went out the door was not foreseeable. The court wrote:

> Mr. Pope, a helicopter pilot and owner of this helicopter, in his deposition, testified that having a clipboard fall out of this helicopter and engage with the rear rotor was not foreseeable.

The court mischaracterized Mr. Pope's testimony. He did not testify that he did not foresee that a clipboard that went out the door could damage the helicopter. What he stated was that he did not fathom that someone would fail to keep control of a clipboard in the helicopter.

> Q. You testified you didn't realize a metal clipboard was a hazard until after the accident, but you also testified that you didn't want things going out of the aircraft. You never put two and two together before the accident?
> A. I did not recognize the clipboard as big of a hazard because the assumption of it being in direct operational control of one of the observers and crew members. I did not fathom that it would come away from the operational control of the operator.
> . . . .
> A. But as a crew member I trust a person to—that's their whole job is to hang onto that, and I trust in their abilities to do that.

The court later added:

> In addition, the cause of the accident was not foreseeable. It would be expected that any object dropped from a height would fall towards the ground. If an object was dropped from a helicopter preparing to land it would be expected

5

that the object would be forced towards the ground at a rate greater than gravity due to the downward thrust of air from the rotors immediately above the cockpit.

There is nothing in the record to support this statement. The court apparently was under the misconception that the helicopter was hovering about 300 to 400 feet in the air and slowly descending straight down when the clipboard left the cabin. Instead, as the eyewitnesses testified, the helicopter was apparently making a landing approach, descending with forward air speed, when the clipboard hit the tail rotor. Although the record does not indicate an estimate of its forward airspeed, it was clearly not hovering.

Immediately following the above quote, the court stated, "How the clipboard got from the cockpit all the way back to the rear rotor is unknown." To the contrary, how it occurred is obvious and undisputed. As explained by one of the experts in his conclusion, the "[a]luminum clipboard was blown back along the right side of the aircraft and drawn into the tail rotor causing failure of the tail rotor blade, tail rotor gear box, and subsequent loss of control of the aircraft." During oral argument on the Defendants' motion for summary judgment, their counsel stated that nobody disputed that "a metal clipboard struck one of the blades of the tail rotor disabling the tail rotor, which then led to a succession of events that caused the tail rotor disassembly to disengage from the tail boom and basically render the helicopter unflyable at that point in time." Thus, there is no basis for the court's conclusion that how the clipboard could have hit the tail rotor was unknown.

Implicit in the district court's analysis is that the Plaintiff was required to prove his case with direct evidence. The court stated: "There is no evidence indicating *how or exactly when* the clip board left the cockpit of the helicopter, or who had control over the clipboard just prior to the door being opened." (Emphasis added.) What the district court failed to recognize however, is that "[c]ircumstantial evidence is competent to establish negligence and proximate cause." *Splinter v. City of Nampa*, 74 Idaho 1, 10, 256 P.2d 215, 220 (1953). The circumstantial evidence indicates that Ms. Schiff failed to maintain control of the clipboard.

## III.
### Did the District Court Err in Holding that the Doctrine of Res Ipsa Loquitur Was Inapplicable?

The Plaintiff argued the doctrine of res ipsa loquitur in opposing the Defendants' motion for summary judgment. The district court held that the doctrine was inapplicable, stating:

> The plaintiff has not offered any facts to show that Ms. Schiff or Mr. Barnett [sic] had exclusive control over the clipboard. The pilot was also in the cockpit and had access to the clipboard. Therefore res ipsa loquitur does not apply to the undisputed facts of this case.

In so holding, the district court erred.

"The doctrine of res ipsa loquitur is a means of establishing negligence through circumstantial evidence. . . . [Its function] is to replace direct evidence of negligence with a permissive inference of negligence." *Harper v. Hoffman*, 95 Idaho 933, 934, 523 P.2d 536, 537 (1974) (footnotes omitted). For the doctrine to apply, two elements must exist: "the agency or instrumentality causing the injury must be under the exclusive control and management of the defendant and the circumstances must be such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence." *Christensen v. Potratz*, 100 Idaho 352, 355, 597 P.2d 595, 598 (1979).

In this case, the evidence was sufficient to show that the clipboard was under the exclusive control and management of the Defendants' employee. As discussed above, the evidence shows that it was Ms. Schiff's clipboard, that she was going to use it during the flight, and that the pilot told her prior to takeoff that she was responsible for the clipboard and was to maintain control of it at all times. If she had given the clipboard to anyone, it would most reasonably have been given to Mr. Barrett. However, because both the Plaintiff's and the Defendants' experts stated that the clipboard came out the right-side door of the helicopter, it is unlikely that Mr. Barrett would have had it immediately before it exited the door. He would have had to have thrown it out the door from the left side of the helicopter.

The court's statement that "[t]he pilot was also in the cockpit and had access to the clipboard" is unavailing. When the clipboard came out of the helicopter, the pilot was making a landing approach. Most likely, he would have had his left hand on the collective lever and his right hand on the cyclic stick. There is absolutely no evidence or logical inference supporting a conclusion that he would have been holding the clipboard.

For res ipsa loquitur to apply, it is not necessary to conclusively show that the pilot would not have had possession of the clipboard. As stated in 57B Am. Jur. 2d *Negligence* § 1235 (2004):

Evidence conclusively showing the control or management of the instrumentality causing the injury is not required. It may be established by either direct or circumstantial evidence, and by such reasonable and logical inferences as may be drawn therefrom. The evidence must afford a rational basis for concluding that the cause of the accident was probably such that defendant would be responsible for any negligence connected with it. That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at the defendant's door.

(Footnotes omitted.)

With respect to the second element, common knowledge and experience would justify the inference that the clipboard would not have gone out of the helicopter but for the failure of Ms. Schiff, or Mr. Barrett in the unlikely event that he had the clipboard, to maintain control of the clipboard. Even if the door of the helicopter had accidentally come open, there is nothing to indicate that Ms. Schiff could not have maintained control of the clipboard. A jury could conclude that the accident would not have happened but for her negligence.

## IV.
### Did the District Court Err in Ruling that the Plaintiff Failed to Establish Negligence Per Se?

"Negligence per se is simply one manner of proving a common law negligence claim." *Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 144 Idaho 848, 853, 172 P.3d 1123, 1128 (2007). "[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se*." *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). "In such cases, the court adopts as the standard of conduct of a reasonable person the requirements of the statute or regulation." *Steed*, 144 Idaho at 853, 172 P.3d at 1128.

The Plaintiff contends that the Defendants were negligent per se because Ms. Schiff should not have been flying on the day of the accident because she had not received all of the required safety training. The documents upon which the Plaintiff relies for the required safety training are a manual titled "Regional Summary of Procedures for Monitoring Low Level Aerial Survey Operations," a policy titled "Charter or Rented Aircraft and Pilots Operating Requirements and Low Altitude Aircraft Procedures and Safety Policy," and a memorandum titled "Director's Memorandum on Flight Safety."

8

The Plaintiff also points to a document produced by the Defendants during discovery as being related to training that Ms. Schiff had previously received. That document is titled "Helicopter Passenger Briefing" and includes under the heading of "Flight Discipline" the statement, "Loose items inside of aircraft secured and manageable." The Plaintiff contends that had she received the required training, it would have reminded her of the need to secure loose items inside the helicopter.

"The Administrative Procedures Act, I.C. §§ 67-5201 et seq., sets out the procedure for the adoption of rules by administrative agencies. Subsection (g) of § 67-5203 provides that '[n]o rule hereafter adopted is valid unless adopted in substantial compliance with this section.'" *Service Emps. Int'l Union, Local 6 v. Idaho Dept. of Health & Welfare*, 106 Idaho 756, 758, 683 P.2d 404, 406 (1984). "In order to support a private cause of action in Idaho, an agency's internal policies must have been adopted pursuant to the Idaho Administrative Procedures Act. *Nation v. State, Dept. of Correction*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007). The Plaintiff does not contend that any of the policies upon which he relies were adopted pursuant to the Administrative Procedures Act. Because they were not, they do not have the force and effect of law, and a cause of action cannot be based upon an alleged violation of them. *Id*. Therefore, the district court did not err in holding that the Plaintiff did not have a claim for negligence per se.

## V.
### Did the District Court Err in Failing to Rule upon the Defendants' Motion to Strike?

The Defendants filed a motion to strike portions of the affidavits of the Plaintiff's experts, but the district court did not rule on that motion. The Plaintiff contends that the district court erred in failing to rule on the motion. "Even though an issue was argued to the court, to preserve an issue for appeal there must be a ruling by the court." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009). "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008). Therefore, we will not address this issue.

## VI.

## Conclusion.

We vacate the judgment and reverse the order granting the Defendants' motion for summary judgment. We award the Plaintiff costs on appeal.

Chief Justice J. JONES, Justices BURDICK, W. JONES, and HORTON **CONCUR.**